IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-cv-00578-M

| | |
|---|---|
| VIRGINIA WASSERBERG, NORTH CAROLINA REPUBLICAN PARTY, and REPUBLICAN NATIONAL COMMITTEE,<br><br>    Plaintiffs,<br><br>  v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS, ALAN HIRSCH, in his Official Capacity as the Chair of and a Member of the North Carolina State Board of Elections, JEFF CARMON, in his Official Capacity as the Secretary of and a Member of the North Carolina State Board of Elections, KEVIN N. LEWIS, in his Official Capacity as a Member of the North Carolina State Board of Elections, SIOBHAN O'DUFFY MILLEN, in her Official Capacity as a Member of the North Carolina State Board of Elections, STACY "FOUR" EGGERS IV, in his Official Capacity as a Member of the North Carolina State Board of Elections, and KAREN BRINSON BELL, in her Official Capacity as Executive Director of the North Carolina State Board of Elections,<br><br>    Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND** |

## INTRODUCTION

Defendants have attempted to remove this proceeding to this Court under a clause in 28 U.S.C. § 1443(2) commonly known as the "Refusal Clause." Under well-established law, it is Defendants' burden to prove this Court has jurisdiction. Yet, Defendants cannot satisfy several of the Refusal Clause's requirements. Thus,

Defendants are unable to meet their burden.  **First**, Defendants cannot show they were sued in state court for refusing to take some action required by state law.  **Second**, Defendants cannot demonstrate that some act required by state law that they refused to do is inconsistent with federal law prohibiting discrimination based on race or color.  **Third**, Defendants cannot show complying with the state law at issue in this case would have constituted discrimination on account of race or color.  Accordingly, the Court should grant Plaintiffs' Motion to Remand and remand this case to state court.

## BACKGROUND

### North Carolina statutes require that mail-in absentee ballots be submitted in special "Container-Return Envelopes" that are sealed.

Properly registered voters may vote absentee by mail in North Carolina.  State law allows a voter to request absentee ballots from his or her county board of elections.  N.C. Gen. Stat. § 163-230.1.  The county board must then mail certain items to the voter, including absentee ballots and a special container-return envelope, which meets specific statutory requirements and in which marked ballots must be returned.  *Id.* § 163-230.1(a)(1)-(4).

The county board is required to print an application on the outside of the container-return envelope that must include several things.  *Id.* § 163-229(b). Among other things, it must include a certification, to be completed by the absentee voter, certifying his or her eligibility to vote the ballot enclosed in the container-return envelope and certifying that he or she voted the ballot that is, in fact, enclosed in the container-return envelope.  *Id.* § 163-229(b)(1).  It also must include a space for the

names, signatures, and addresses of two witnesses or one notary public who witnessed the voter casting the ballot that the voter places in the container-return envelope. *Id.* § 163-229(b)(3); *id.* § 163-231(a)(6). After marking his or her absentee ballot, the voter must submit it to the county board of elections in the container-return envelope. *Id.* § 163-231(b).

Critically, several North Carolina General Statutes specifically require that the container-return envelope must be sealed before absentee ballots are returned to, and counted by, a county board of elections:

- a. N.C. Gen. Stat. § 163-231(a)(3) requires that the voter must place his or her "folded ballots ***in the container-return envelope and securely seal it*** or have this done in the voter's presence." (Emphasis added.)

- b. Similarly, N.C. Gen. Stat. § 163-230.1(d) specifically provides that an application for an absentee ballot "shall be completed and signed by the voter personally, the ballots marked, the ballots ***sealed in the container-return envelope***, and the certificate [on the sealed container-return envelope] completed as provided in G.S. 163-231." (Emphasis added.)

- c. N.C. Gen. Stat. § 163-231(a) provides directions for transmitting "***the sealed container-return envelope***, with the ballots enclosed," to the appropriate county board of elections. (Emphasis added.)

- d. N.C. Gen. Stat. § 163-231(b) describes in detail how "***[t]he sealed***

3

***container-return envelope*** in which executed absentee ballots have been placed shall be transmitted to the county board of elections who issued those ballots." (Emphasis added.)

For ease of reference, this memorandum will refer to these statutes governing container-return envelopes as the "CRE Statutes."

It is readily apparent that the CRE Statutes are intended to prevent someone from tampering with an absentee voter's ballot between the time the ballot is executed and when it is ultimately counted by the county board of elections. After all, the CRE Statutes require that an absentee voter mark a ballot and then place that ballot "in the container-return envelope and securely seal it or have this done in the voter's presence." *Id.* § 163-230.1(d). The voter and witnesses sign that sealed container-return envelope, which remains sealed through transmission to the county board. *Id.* §§ 163-229(b), 163-231(a), 163-231(b).

Laws like the CRE Statutes that prevent voter fraud are vitally important. "Since 1776 the state constitution [of North Carolina] has recognized the importance of elections and their integrity in the Declaration of Rights." *Kennedy v. N.C. State Bd. of Elec.,* \_\_ N.C. \_\_, 905 S.E.2d 55, 56 (2024). Indeed, the North Carolina Constitution's Free Exercise Clause requires that, "[a]ll elections shall be free." N.C. Const. art. I, § 10; *see Kennedy*, 905 S.E.2d at 56. "Because elections are free when votes are accurately counted, . . . [a court] should not leave open the possibility that . . . invalid ballots could be commingled with official ballots." *Kennedy,* 905 S.E.2d at 58 (Berger, J., concurring) (cleaned up).

4

Furthermore, "[e]very voter . . . has a right . . . to have his vote fairly counted, without it being distorted by fraudulently cast votes." *Anderson v. United States*, 417 U.S. 211, 227 (1974). But the deposit of invalid ballots "in the ballot boxes, no matter how small or great their number, dilutes the influence of honest votes in an election, and whether in greater or less degree is immaterial." *Id.* at 226. "The right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Purcell v. Gonzales*, 549 U.S. 1, 4 (2006) (per curiam).[1] "The right to an honest count [of ballots cast] is a right possessed by each voting elector, and to the extent that the importance of his vote is nullified, wholly or in part, he has been injured in the free exercise of a right and privilege . . . ." *Anderson*, 417 U.S. at 226 (cleaned up).

### The NCSBE has provided advice to county boards of elections that directly contradicts the CRE Statutes.

On June 11, 2021, the NCSBE issued Numbered Memo 2021-03 (the "Numbered Memo").[2] The Numbered Memo incorrectly advised North Carolina county boards of elections that they could count an absentee ballot even if it was returned in an unsealed container-return envelope (which the NCSBE referred to as

---

[1] It is also true that, "[c]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy. Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government. Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." *Purcell*, 549 U.S. at 4.

[2] Defendants filed Plaintiffs' Complaint and Petition (the "Complaint") as D.E. 1-3 and filed all exhibits to the Complaint as D.E. 1-4. Defendants filed the Numbered Memo (Exhibit A to the Complaint) as pages 3 to 15 of D.E. 1-4.

5

a "ballot envelope," rather than using the statutory term "container-return envelope"), so long as the unsealed container-return envelope was returned in some other, larger envelope that had been sealed. (D.E. 1-4 pages 5 to 6.)

On May 20, 2024—nearly five months ago—Plaintiffs submitted a request to the NCSBE for a declaratory ruling pursuant to N.C. Gen. Stat. § 150B-4.[3] Plaintiffs notified the NCSBE of the flaws in the Numbered Memo's guidance about the counting of absentee ballots returned in unsealed container-return envelopes. (D.E. 1-4 pages 18 to 22.)

On August 2, 2024, the NCSBE issued its declaratory ruling in response to Plaintiffs' request (the "Declaratory Ruling").[4] Once again using the term "ballot envelope" rather than the correct statutory term "container-return envelope," the Declaratory Ruling erroneously declared, among other things, that:

> the instruction at issue in Numbered Memo 2021-03 pertaining to how county boards must address a ballot that is sealed in the return envelope rather than sealed in the ballot envelope is the correct application of the law.

(D.E. 1-4 page 49.)

Plaintiffs filed this proceeding, seeking judicial review of, and reversal of, the Declaratory Ruling's decision concerning application of the CRE Statutes pursuant to the North Carolina Administrative Procedures Act. *See* N.C. Gen. Stat. § 150B-4(a)(3); *id.* §§ 150B-43, et seq. (Complaint, ¶ 54.) Plaintiffs alternatively sought a declaratory judgment under the North Carolina Declaratory Judgment Act, N.C. Gen.

---

[3] Filed as Exhibit B to the Complaint and pages 17 to 25 of D.E. 1-4.

[4] Filed as Exhibit C to the Complaint and pages 27 to 50 of D.E. 1-4.

Stat. §§ 1-253, et seq., that the Declaratory Ruling's opinion concerning application of the CRE Statutes is invalid. (Complaint, ¶ 54.) Plaintiffs did not allege any federal claims for relief. Nevertheless, on the thirtieth day after accepting service, Defendants removed this case to this Court, purporting to base their removal on 28 U.S.C. § 1443(2). (Notice of Removal [D.E. 1], ¶¶ 2, 5-6.)

**ARGUMENT**

I. <u>**Standard of Decision**</u>

    A.     <u>**Federal Subject Matter Jurisdiction**</u>

"Subject matter jurisdiction defines a court's power to adjudicate cases or controversies—its adjudicatory authority—and without it, a court can only decide that it does not have jurisdiction." *Burrell v. Bayer Corp.*, 918 F.3d 372, 379 (4th Cir. 2019). Furthermore, "federal courts are courts of limited jurisdiction. District courts may only hear a case when they possess the power authorized by Constitution and statute." *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 432 (4th Cir. 2014) (cleaned up & citations omitted). "A [federal] court is to presume, therefore, that a case lies *outside* its limited jurisdiction unless and until jurisdiction has been shown to be proper." *U.S. v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008) (court's emphasis).

A party seeking to remove a case to federal court "bears the burden of establishing federal jurisdiction." *Burrell*, 918 F.3d at 380-81. "Because removal jurisdiction raises significant federalism concerns," courts "must strictly construe removal jurisdiction. If federal jurisdiction is doubtful, remand is necessary." *Common Cause v. Lewis*, 956 F.3d 246, 252 (4th Cir. 2020) ("*Common Cause II*"). If a case is "not properly removed, because it . . . [is] not within the original jurisdiction

of the United States district courts, then . . . [a] district court . . . [is] without jurisdiction to rule on its merits and instead . . . [is] required to remand the action to state court." *Burrell*, 918 F.3d at 379. Indeed, the U.S. Code mandates that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

## B. Removal under the Refusal Clause

Defendants assert that they may remove this case to federal court based on 28 U.S.C. § 1443(2). (Notice of Removal, ¶¶ 5-6.) They cite no other statute in support of removal. Section 1443(2) provides as follows:

> Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> . . .
>
> (2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

28 U.S.C. § 1443(2).

In this case, Defendants attempt to rely specifically on subsection (2)'s second clause—commonly referred to as the "Refusal Clause"—asserting that removal is proper here because, they claim, "Plaintiffs seek relief for Defendants' refusal to do an 'act on the ground that [the act] would be inconsistent' with 52 U.S.C. § 10101(2)(B)." (Notice of Removal, ¶ 6.)

The Refusal Clause's purpose is " 'to enable State officers, who shall refuse to enforce State laws discriminating . . . on account of race or color to remove their cases

8

to the United States courts when prosecuted for refusing to enforce those laws.'" *Common Cause II*, 956 F.3d at 254 (quoting *City of Greenwood Miss. v. Peacock*, 384 U.S. 808, 824 n.22 (1966) (quoting explanation for § 1443(2) from Congressional record)); *see Detroit Police Lieutenants & Sergeants Ass'n v. City of Detroit*, 597 F.2d 566, 568 (6th Cir. 1979) (per curiam); *New York v. Horelick*, 424 F.2d 697, 703 (2d Cir. 1970).

## II. **Defendants have failed to meet their burden of establishing a proper removal and subject matter jurisdiction.**

Defendants cannot satisfy several of the Refusal Clause's requirements and consequently cannot demonstrate the Court has subject matter jurisdiction here.

### A. **Defendants have failed to show they are being sued for refusing to commit an act.**

As 28 U.S.C. § 1443(2)'s plain text reveals, "the Refusal Clause authorizes removal only where the defendant is sued 'for refusing to do any act,' or where the alleged unlawful conduct from which a plaintiff seeks relief is an affirmative refusal to enforce state laws." *Common Cause I*, 956 F.3d at 255; *see Thornton v. Holloway*, 70 F.3d 522, 523 (8th Cir. 1995); *Suttlar v. Thurston*, No. 4:22-cv-00368 KGB, 2022 WL 2713648, at *5-7 (E.D. Ark. July 13, 2022); *Common Cause v. Lewis*, 358 F. Supp. 3d 505, 510 (E.D.N.C. 2019) ("*Common Cause I*"), *aff'd*, 956 F.3d 246, 252 (4th Cir. 2020); *City & Cnty. of San Francisco v. Civil Serv. Comm'n*, No. C 02-03462 WHA, 2002 WL 1677711, at *4 (N.D. Cal. July 24, 2002); *Brown v. Florida*, 208 F. Supp. 2d 1344, 1351 (S.D. Fla. 2002); *Mass. Council of Constr. Emp., Inc. v. White*, 495 F. Supp. 220, 222 (D. Mass. 1980).

9

Tellingly, the Notice of Removal fails to identify any act that Defendants claim they have refused to do in this case. This is because this is not, in fact, a case in which defendants have refused to act or refused to enforce some state law. Instead, Plaintiffs here are complaining about the NCSBE's affirmative acts in issuing erroneous guidance to county boards of elections and then issuing a declaratory ruling incorrectly asserting that the erroneous guidance was correct. These are plainly actions which have already been taken by the NCSBE, not refusals to do something.

As Defendants cannot meet the Refusal Clause's "refusal" requirement, the Court should remand this case to state court. *See, e.g., Common Cause I*, 358 F. Supp. 3d at 507, 510-11 (remanding case in which "plaintiffs challenge[d] an action already completed," i.e., the General Assembly's adoption of redistricting plans); *see also, e.g., Detroit Police*, 597 F.2d at 567-68 (remanding case that challenged implementation of promotional eligibility list for police officers); *City & Cnty. of San Francisco*, 2002 WL 1677711, at *4 (remanding case that challenged act of reinstating an employee, because "the challenge at issue in no way involved failure to act[;] [t]o the contrary, it concerned an affirmative order"); *Mass. Council*, 495 F. Supp. at 220-22 (remanding case that challenged certain executive orders; "the 'refusal' clause is unavailable in this case, where the defendants' actions, rather than inaction, are being challenged").

- **B. Defendants have failed to satisfy the Refusal Clause's "inconsistent with such law" requirement.**

    - **1. Defendants have failed to show that they refused to commit an act, otherwise compelled by state law, that is inconsistent with a federal law prohibiting discrimination on account of race or color.**

The Refusal Clause requires that the removing defendant demonstrate, among

10

other things, that the act that he or she refused to take was "inconsistent with" the federal law prohibiting discrimination on account of race or color. 28 U.S.C. § 1443(2); *see Common Cause I*, 358 F. Supp. 2d at 512-13.

Plaintiffs anticipate Defendants will argue that North Carolina's voting laws are inconsistent with the federal "Materiality Provision" of the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B) (Notice of Removal, ¶ 3) and therefore—according to Defendants' tortuously strained logic—Defendants are somehow permitted to remove this action pursuant to the Refusal Clause. But for purposes of a Refusal Clause removal, the "inconsistency" referenced in the clause must be between (a) an "act," which is compelled by state law but which a defendant refuses to commit, and (b) a federal law that prohibits the "act." *Common Cause I*, 358 F. Supp. 3d at 513. As discussed above, however, the Notice of Removal fails to identify any act Defendants are being sued for refusing to commit. This is a significant problem for Defendants, because "[w]hen a refusal to act is itself doubtful and uncertain, any conflict between such refusal and federal law also is uncertain." *Id.* at 513. And "[i]f federal jurisdiction is doubtful, remand is necessary." *Common Cause II,* 956 F.3d at 252.

Instead of identifying some state-mandated act that they refused do, Defendants assert that the federal Materiality Provision somehow required them to provide guidance to county boards of elections that directly contradicts state voting laws. (Notice of Removal, ¶ 3; Declaratory Ruling [D.E. 1-4 pages 43-44].) After all, the Notice of Removal contends that, "Defendants' guidance is based on their obligation to comply with 52 U.S.C. § 10101(2)(B)"—i.e., the Materiality Provision.

11

(Notice of Removal, ¶ 3.) Notably, nothing in the Materiality Provision, which is quoted in full below, mandates that Defendants provide any guidance to anyone about anything.

While the Refusal Clause plainly requires a defendant to identify an "act" compelled by state law that is inconsistent with federal law, some courts have nevertheless held that, "removal is appropriate where there is a colorable conflict between <u>state [law]</u> and federal law." *Common Cause I*, 358 F. Supp. 3d at 512-13 (collecting cases; emphasis added). This Court has noted that such a position "require[s] . . . a stretch of the language of the removal statute, which references in its text inconsistency only between *the act* being refused and federal equal protection law." *Id.* at 513 (court's emphasis).

Regardless, even under other courts' more elastic interpretations of § 1443(2), a state official "petitioning for removal should at least be in a position to allege [a] square and definite inconsistency between the state law obligation at issue and controlling federal law." *Dodd v. Rue*, 478 F. Supp. 975, 979 (S.D. Ohio 1979) (cleaned up). To allow a lesser showing "would constitute a patent and unjustifiable departure from the uniformly narrow construction given civil rights removal provisions." *Id.* at 979 (cleaned up).

While the Notice of Removal here mentions Chapter 163 of the North Carolina General Statutes and the Materiality Provision (Notice of Removal, ¶ 3), it fails to identify any "square and definite inconsistency between [them]." Merely invoking the Materiality Provision is not, however, enough to establish jurisdiction under the

12

Refusal Clause. *See Taylor v. Currie*, 386 F. Supp. 2d 929, 937 (E.D. Mich. 2005) (holding that, "asserting a general reliance on the Voting Rights Act," or making a " 'vaguely defined claim' that a state official's actions would 'be inconsistent with' the equal protection clause is not enough to allow removal under § 1443(2)" (quoting *Dodd*, 478 F. Supp. at 979)). Furthermore, an examination of the CRE Statutes and the Materiality Provision reveals that the CRE Statutes are not, in fact, "inconsistent" with the Materiality Provision.

### 2. The CRE Statutes are not "inconsistent with" the Materiality Provision.

The Materiality Provision provides as follows:

> No person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C.§ 10101(a)(2)(B).

The Materiality Provision "prohibits States from denying an applicant the right to vote based on an error or omission in paperwork involving his application if that mistake is immaterial in determining whether he is qualified to vote." *Pennsylvania State Conf. of NAACP Branches v. Sec. of Commonwealth of Pennsylvania*, 97 F.4th 120, 130 (3d Cir.), *reh'g & reh'g en banc denied*, 2024 WL 3085152 (3d Cir. Apr. 30, 2024). Thus, the Materiality Provision governs errors or omissions made during the initial stage of the voting process—when a voter registers to vote. *Id.* at 129-31.

On the other hand, the Materiality Provision does not apply to a later stage of

the voting process—the stage at which a voter is expected to comply with state ballot-casting rules when he or she votes. *Id.* Instead, the Materiality provision "lets States decide the rules that must be followed to cast a valid ballot." *Id.* at 139. "It does not prevent enforcement of neutral state requirements on how voters may cast a valid ballot, no matter the purpose those rules may serve." *Id.* at 137. Thus, the Materiality Provision simply "does not reach something as distinct from 'registration' as the casting of a mail ballot at the end of the voting process." *Id.* at 135.

The CRE Statutes' requirement that an absentee voter must seal his or her ballots in the container-return envelope does not concern voter registration. Instead, the CRE Statutes are state rules that prescribe how an already-registered voter may cast an effective absentee ballot. Thus, an absentee voter is not "denied the right to vote" for purposes of the Materiality Provision when a ballot is not counted because it is not returned in a sealed container-return envelope. *See, e.g., Pennsylvania*, 97 F.4d at 125 (rejecting the argument that a state-law requirement that an absentee voter must date his or her absentee ballot was subject to Materiality Provision).

In short, the Materiality Provision applies to a different part of the voting process than the CRE Statutes, and the CRE Statutes are not "inconsistent with" the Materiality Provision for purposes of 28 U.S.C. § 1443(2). There is no conflict between the Materiality Provision and the CRE Statutes that could provide a basis for removal in this case. Accordingly, the Court should remand this case to state court.

### C. Defendants have failed to show that the CRE Statutes would compel them to discriminate on account of race or color.

As this Court has held, "the privilege of removal is conferred only upon state

14

officers who refuse to enforce state laws discriminating on account of race or color." *Common Cause I*, 358 F. Supp. 3d at 511 (cleaned up); *see Taylor*, 386 F. Supp. 2d at 935 (holding that § 1443(2) "may be invoked when removing defendants make a colorable claim that they are being sued for acting pursuant to a state law which, though facially neutral, would produce or perpetuate a racially discriminatory result as applied" (cleaned up)); *City & Cnty. of San Francisco*, 2002 WL 1677711, at *5 (same); *see also Vlaming v. West Point Sch. Bd.*, 10 F.4th 300, 309 (4th Cir. 2021) ("The Supreme Court has limited the meaning of a 'law providing for equal rights' in § 1443 to only those concerning racial equality."). Thus, for example, a case in which "a teacher was prosecuted for having admitted black children to a school in which racial segregation was required by state law" would be removable under the Refusal Clause. *Horelick*, 424 F.2d at 703.

In contrast, courts have consistently remanded cases in which notices of removal fail to demonstrate that the defendants are being prosecuted for failing to comply with a state law that would cause them to unlawfully discriminate on the basis of race or color. *See, e.g., Horelick*, 424 F.2d at 703 (affirming remand where "Petitioners are not being prosecuted for refusing to enforce any law of the State or ordinance of the City of New York discriminating against school children on account of race or color"); *City & Cnty. of San Francisco*, 2002 WL 1677711, at *6 (remanding case in which "[t]he notice of removal makes no race-based claim"). Indeed, one court noted that it would "not allow Defendants to take haven in federal court under the guise of providing equal protection for the citizens of Detroit but with a goal of

15

perpetuating their violation of non-discriminatory state law." *Taylor*, 386 F. Supp. 2d at 937.

There is nothing in this case to suggest that, by complying with the CRE Statutes, the NCSBE or even any county board of elections would be engaged in racially discriminatory conduct. The CRE Statutes apply equally to all races. And, as discussed above, the one federal law that the Notice of Removal cites—the Materiality Provision—"does not prevent enforcement of neutral state requirements on how voters may cast a valid ballot." *Pennsylvania*, 97 F.4th at 137.

Defendants just do not agree with the General Assembly's duly enacted, non-discriminatory, election-fraud-prevention laws and are trying to encourage county boards of election to ignore those laws. This Court should not reward such behavior by permitting Defendants to use their improper conduct[5] as a key to unlock the doors to federal court. It should not allow Defendants "to take haven in federal court under the guise of providing equal protection for the citizens [of North Carolina] . . . but with a goal of perpetuating their violation of non-discriminatory state law." *Taylor*, 386 F. Supp. 2d at 937. As this Court held in another case in which a defendant unsuccessfully attempted to remove under the Refusal Clause:

> As the Supreme Court has made clear, . . . defendants cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under

---

[5] The North Carolina General Assembly has expressly prohibited the NCSBE from making rules and regulations that "conflict with any provisions" of Chapter 163 of the North Carolina General Statutes. N.C. Gen. Stat. § 163-22(a). The CRE Statutes are located in Chapter 163. *See also Carson v. Simon*, 978 F.3d 1051, 1061 (8th Cir. 2020) (holding that allowing "an executive branch official to negate the duly enacted election laws of a state . . . is toxic to the concepts of the rule of law and fair elections").

> federal law. To allow removal . . . [in such a] case would give defendants the power to select the forum in which the claim is litigated. Under such circumstances . . . [a] court must adhere to the Fourth Circuit's guidance and remand the case back to state court.

*Stephenson v Bartlett*, 180 F. Supp. 2d 779, 786 (2001) (citation & internal quotation marks omitted).

### D. Cases cited in Defendants' Notice of Removal are inapposite.

Defendants' Notice of Removal cites several cases, but none of them support Defendants' arguments for removal. The case upon which Defendants principally rely, *Cavanaugh v. Brock*, 577 F. Supp. 176 (E.D.N.C. 1983), is readily distinguishable. There, state officials refused to act in compliance with a state constitutional provision, asserting that to do so would have violated "the Voting Rights Act and equal protection principles." *Id.* at 179-80. The constitutional provision at issue had not obtained preclearance under the Voting Rights Act from the Attorney General. *Id.* at 179. In contrast, Defendants in this case have failed to show that, among other things, they have refused to act in compliance with any state law or that any act they are required to take by a state law would be inconsistent with a federal law.

*Voketz v. City of Decatur*, No. 5:14-CV-00540-AKK, 2020 WL 5529618 (N.D. Ala. Sept. 15, 2020), *appeal dismissed*, 2022 WL 16907840 (11th Cir. Aug. 23, 2022), also cited by Defendants, stands in stark contrast to this case. The three requirements of the Refusal Clause that Defendants have failed to satisfy here were satisfied by the *Voketz* defendants. The *Voketz* defendants were members of a city council who refused to convert a city government into a council-manager government

17

as required by state law. *Id.* at *1. They refused to do so because the conversion would conflict with federal laws "by impermissibly diluting African American voting power," in violation of the Voting Rights Act. *Id.* at *1, 3.[6]

Other cases cited by Defendants are simply irrelevant. *Whatley v. City of Vidalia*, 399 F.2d 521 (5th Cir. 1968), involved removal under 28 U.S.C. § 1443(1), not § 1443(2). *Smith v. Winter*, 717 F.2d 191, 193-94 (5th Cir. 1983), *Neal v. Wilson*, 920 F. Supp. 976, 983-85 (E.D. Ark. 1996), *Jackson v. Riddle*, 476 F. Supp. 849, 858-62 (N.D. Miss. 1979), and *Nevin v. California*, 413 F. Supp. 1039, 1041-42 (1976), all concerned removals under 28 U.S.C. § 1443(1), rather than § 1443(2), and notably, each case was ultimately remanded for lack of subject matter jurisdiction. Finally, *O'Keefe v. New York City Bd. of Elections*, 246 F. Supp. 978, 979 (1965), was removed under the first clause of § 1443(2), not the Refusal Clause, which is § 1443(2)'s second clause.

In short, none of the cases cited in the Notice of Removal support Defendants' attempt to remove this case or provide any valid reason not to remand the case.

## Conclusion

As Defendants have failed to prove that the Court has subject matter jurisdiction, the Court should remand this case to the North Carolina General Court

---

[6] The *Voketz* court noted that, "removal under § 1443(2) is seldom invoked because the statute has historically been limited to state officers . . . [and] [t]hese [persons] ordinarily prefer to litigate in the state court." *Voketz*, 2020 WL 5529618, at *3 (cleaned up). Indeed, in light of state actors' understandable, natural preference for a state-court venue, Defendants' curious choice to remove this case under the circumstances suggests a calculated move to delay a judicial decision until after the elections on November 5, 2024.

of Justice, Superior Court Division, Wake County.

Respectfully submitted, this the 14th day of October 2024.

/s/ Thomas G. Hooper
Thomas G. Hooper
Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C.
101 South Tryon Street, Suite 3600
Charlotte, NC 28280
Ph: (980) 256-6300
thooper@bakerdonelson.com
N.C. State Bar No. 25571
*Attorney for Plaintiffs*

/s/ John E. Branch III
John E. Branch III
Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C.
2235 Gateway Access Point, Suite 220
Raleigh, NC 27607
Ph: (984) 844-7900
jbranch@bakerdonelson.com
N.C. State Bar No. 32598
*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send electronic notification of the filing to the following: Laura H. McHenry, Esq. (lmchenry@ncdoj.gov); and Mary Carla Babb, Esq. (mcbabb@ncdoj.gov). Additionally, a courtesy copy of the foregoing document has been e-mailed to Narendra K. Ghosh, Esq. (nghosh@pathlaw.com).

This, the 14th day of October 2024.

/s/ Thomas G. Hooper
Thomas G. Hooper
Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C.
101 South Tryon Street, Suite 3600
Charlotte, NC  28280
Phone:  (980) 256-6300
thooper@bakerdonelson.com
N.C. State Bar No. 25571

*Attorney for Plaintiffs*