UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-cv-578

| | |
|---|---|
| VIRGINIA WASSERBERG, NORTH CAROLINA REPUBLICAN PARTY, and REPUBLICAN NATIONAL COMMITTEE,<br><br>Plaintiffs,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS, et al.,<br><br>Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |

Defendant State Board of Elections (State Board), by and through undersigned counsel, hereby submits this memorandum of law in support of its motion to dismiss Plaintiffs' Complaint.

## INTRODUCTION

Plaintiffs' Complaint raises a single question: whether the State Board's guidance to county boards of elections on handling of absentee ballots, issued in the form of a Numbered Memo, conflicts with N.C. Gen. Stat. § 163-231, a state law requiring absentee ballots to be returned in a sealed "container-return" envelope. Plaintiffs seek a declaratory judgment interpreting state law in a manner that is inconsistent with the statute and contrary to federal law. The State Board's interpretation of § 163-231 is the best reading of the statute's text and, in any event, is the only possible reading of the statute that would not violate the materiality provision of the federal Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B). The guidance issued in the State Board's Numbered Memo thus reflects the accurate and proper application of the law. For that reason, the Complaint fails to state a claim for relief under any legal theory, warranting dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

# STATEMENT OF THE FACTS

## A. Factual and Legislative Background

### 1. The State Board Administers Absentee-by-Mail Voting.

Before any voter may receive and vote an absentee ballot in North Carolina, they must establish their eligibility to vote by submitting an absentee ballot request form to their county board of elections. N.C. Gen. Stat. §§ 163-230.1(a), 163-230.2. The request form requires the voter to provide their personal contact information, their date of birth, and one of three confidential identification numbers: their N.C.D.M.V. driver's license number, N.C.D.M.V. nonoperator identification number, or the last four digits of their social security number. N.C. Gen. Stat. § 163-230.2(a). "Upon receiving a completed request form for absentee ballots, the county board shall confirm that voter's registration," and may then issue the absentee ballot to the voter. *Id.* § 163-230.2(d).

County boards of elections must send to any qualified, eligible voter who requests an absentee ballot a package containing (1) the official ballots that voter is entitled to vote; (2) a "container-return envelope" for the ballots, printed in accordance with N.C. Gen. Stat. § 163-229; (3) an instruction sheet; and (4) a statement of the requirement for a photocopy of the voter's photo ID under N.C. Gen . Stat. § 163-166.16(a) or an affidavit identifying an exception to the state's photo ID law under N.C. Gen. Stat. § 163-166(d). N.C. Gen. Stat. § 163-230.1(a).

The "container-return envelope" printed by the county board must include the following:

- A certification that the voter is eligible to vote the enclosed ballot, and that the voter in fact did vote the enclosed ballot;
- A space for the voter's name and signature;
- A space for the identification of two persons witnessing the casting of the absentee ballot, including the witnesses' printed names, signatures, and addresses.

- A space for the name, address, and signature of any person who assisted the voter if the voter is unable to complete and sign the certification;
- A space for approval by the county board of elections;
- A space to allow reporting of a name change (as permitted by N.C. Gen. Stat. §163-82.16);
- A prominent display of unlawful voting acts;
- An area to attach additional documentation necessary to comply with the photo ID requirements (as permitted by N.C. Gen. Stat. § 163-230.1); and
- A barcode or other unique identifier that allows the county board to track the ballot following return of the voted ballot to the county board of elections.

N.C. Gen. Stat. § 163-229(b).

State law requires an absentee voter to provide photo ID documentation with their absentee ballot, whether such documentation is a photocopy of the voter's identification or an affidavit known as a photo ID exception form. The photocopy of a photo ID is confidential under state law and must therefore be protected from disclosure. N.C. Gen. Stat. § 163-233(a) ("Any copies of any photographic identification associated with the absentee ballots shall not be a public record."). Similarly, the photo ID exception form, when it includes the voter's driver's license number or last four digits of their social security number, contains confidential information that must be protected from disclosure. N.C. Gen. Stat. § 163-82.10(a1) ("Full or partial social security numbers; . . . photocopies of identification for voting; and drivers license numbers, whether held by the State Board or a county board of elections, are confidential and shall not be considered public records and subject to disclosure to the general public under Chapter 132 of the General Statutes"); *see* N.C. Gen. Stat. § 163-230.1(g)(2) (requiring exception forms that identify a reasonable impediment of "inability to attach a physical copy of the voter's identification with the returned application" to also include the voter's driver's license or DMV ID number, or last four digits of the voter's social security number).

After a voter receives and executes an absentee ballot, the ballot and the photo ID documentation should then be placed in a sealed container-return envelope and transmitted to the voter's county board of elections via mail, courier service, or hand delivery. *Id*. § 163-231(b).

The State Board is required to provide a cure process for deficiencies associated with returned absentee-by-mail ballots.[1] Some deficiencies, such as those involving a deficiency with the application contents, are curable by the voter "with supplemental documentation or attestation provided by the voter." N.C. Gen. Stat. § 163-230.1. Deficiencies that cannot be cured "with supplemental documentation or attestation," however, typically require spoiling the ballot (i.e., discarding it) and mailing a new ballot to the voter.

On June 11, 2021, the State Board issued Numbered Memo 2021-03, with the subject line "Absentee Container-Return Envelope Deficiencies." Compl. Ex. A, p. 1 [DE 1-4, p. 3]. The Numbered Memo provided guidance to county boards of election on how to handle any anomalies in absentee ballots received by mail, reminding them that county boards "must ensure that the votes of all eligible voters are counted using the same standards, regardless of the county in which the voter resides." *Id.*

### 2. The State Board Modifies Its Mail-In Voting Guidance to Implement North Carolina's Voter ID Law.

In 2018, the General Assembly passed a photo ID law, Session Law 2018-144. Session Law 2018-144 was initially enjoined by both federal and state courts. *N.C. State Conf. of the NAACP v. Cooper*, 430 F. Supp. 3d 15, 54 (M.D.N.C. 2019); *see Holmes v. Moore*, 384 N.C. 426, 432, 886 S.E.2d 120, 127 (2023). But these court-ordered injunctions were eventually lifted. *N.C.*

---

[1] *See Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158 (M.D.N.C. 2020) (explaining that due process requires such a cure opportunity).

4

*State Conf. of the NAACP v. Raymond*, 981 F.3d 295, 310-11 (4th Cir. 2020); *Holmes*, 384 N.C. at 460, 886 S.E.2d at 144. Thus, North Carolina's voter ID law took effect April 23, 2023. *Id.*

Under the new voter ID law, when a registered voter votes absentee-by-mail, that voter's ballot must be accompanied by photo ID documentation, either in the form of a photocopy of an acceptable photo ID[2] or a photo ID exception form.[3] N.C. Gen. Stat. § 163-230.1(f1). The voter ID law authorizes the State Board to establish procedures, through administrative rules or instructions to county boards, to implement the voter ID requirement for absentee voters in particular. N.C. Gen. Stat. § 163-230.1(g).

When the Numbered Memo was initially drafted in 2021, the photo ID requirement was not enforceable in light of the injunctions mentioned above. Therefore, a voter transmitting an absentee ballot to the appropriate county board of elections would do so in a single ballot container-return envelope. Once the photo ID provisions of Session Law 2018-144 became enforceable, the Numbered Memo was revised to include processes related to photo ID requirements for absentee voting. This photo ID requirement necessitated a two-envelope system to return the absentee ballot.

As explained in revised Numbered Memo 2021-03:

> Previously, a voter transmitted their absentee-by-mail ballot to the county board in a single ballot container-return envelope. However, with the implementation of photo ID requirements starting with the 2023 municipal elections, the ballot envelope is now transmitted to the

---

[2] The list of acceptable IDs includes, among others, N.C. driver's licenses, passports, free photo IDs cards issued by the DMV or the county boards of elections, as well as IDs issued by colleges, universities, and government employers. *See* N.C. Gen. Stat. § 163-166.16(a).

[3] *See* N.C. Gen. Stat. §§ 163-166.16(d) and (e) (identifying the three statutory exceptions as (1) that the voter suffers from a reasonable impediment preventing the voter from presenting a photo ID; (2) that the voter has a religious objection to being photographed; or (3) that the voter has been a victim of a natural disaster within 100 days of an election day); *see also id.* § 163-230.1(g) (providing an additional exception for absentee voters).

> county board in an outer return envelope to ensure the privacy of the accompanying photo ID documentation.

Ex. A, p. 2 (issued September 25, 2023) [DE 1-4, p. 4]. A clear sleeve is now provided on the ballot envelope to be used for including the photo ID documentation. *See id.* at p. 4 [DE 1-4, p. 6].

The addition of photo ID documentation—and the need for a second, outer envelope to contain that documentation and maintain its confidentiality while in transit—created new potential errors in the return of an absentee ballot. Recognizing this, the State Board amended the Numbered Memo to provide guidance to election officials on whether certain errors required the ballot to be spoiled and reissued, or were instead errors that did not constitute deficiencies. If an absentee ballot is returned without a deficiency, then the voter's absentee application and photo ID documentation is reviewed at the county board's next absentee meeting to determine whether the application has been properly executed and is accompanied by the required photo ID documentation; if so, the county board approves the application and ballot. N.C. Gen. Stat. § 163-230.1(e), (f), and (f1). If, at the absentee ballot meeting, a county board finds that the application was not properly executed, the county board disapproves the absentee application. N.C. Gen. Stat. § 163-230.1(f).

The revised Numbered Memo, as it was written at that time, explained that a ballot placed in an unsealed, executed ballot envelope, but received in a sealed outer envelope, should be addressed at the absentee meeting, rather than be deemed spoiled and reissued. Ex. A, pp. 3-4 [DE 1-4, pp. 5-6]. Similarly, if the ballot is inside the outer return envelope or the clear sleeve on the ballot envelope intended for the voter's photo ID documentation, rather than inside the ballot envelope, and the return envelope is sealed, the Numbered Memo instructed that the ballot should be addressed at the next absentee meeting, rather than automatically spoiled for deficiencies. *Id.* at p. 4 [DE 1-4, p. 6]. In these situations, the Numbered Memo, as issued on September 25, 2023, explained, "the ballot was received in a sealed envelope and is therefore not deficient." *Id.* (citing

6

N.C. Gen. Stat. §§ 163-230.1(d), 163-231(a)(3)). If a voter returns a ballot in an unsealed ballot envelope and unsealed return envelope, however, the ballot must be spoiled. *Id.* at p. 3 [DE 1-4, p. 5].

In January 2024, following implementation of the photo ID requirement in the 2023 municipal elections, the State Board revised the Numbered Memo again to make further refinements to the process related to photo ID requirements for absentee-by-mail voting, including the guidance that is the subject of Plaintiffs' requested Declaratory Ruling and this Complaint. As part of those revisions, the State Board reminded the county boards that in regard to "all ballot mistakes or anomalies, election officials must be guided by the clear instruction in the federal Civil Rights Act of 1964 to not allow an error on ballot materials to lead to a ballot's rejection when that error is immaterial to determining a voter's eligibility to cast the ballot." *Id.* at 3, n.11 (citing 52 U.S.C. § 10101(a)(2)(B)) [DE 1-4, p. 5]. With this instruction, the Numbered Memo quotes the Materiality provision of the Civil Rights Act, which reads,

> No person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record of paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election."

*Id.*

### 3. The State Board Rejects Plaintiffs' Proposed Challenge to Its Guidance.

#### i. Plaintiffs' request a Declaratory Ruling.

On May 20, 2024, Plaintiffs submitted a Request for Declaratory Ruling to the State Board asserting a conflict between North Carolina law and the Numbered Memo. Compl. ¶¶ 9, 36 [DE

7

1-3]; Ex. B [DE 1-4, pp. 16-25]. Among other things,[4] Plaintiffs asserted that the Numbered Memo conflicts with N.C. Gen. Stat. § 163-230.1 and -231's requirement that absentee ballots must be returned in sealed container-return envelopes. Compl. ¶¶ 37, 56 [DE 1-3].

On June 18, 2024, the State Board agreed to consider Plaintiffs' Request to issue a declaratory ruling, triggering a 45-day deadline to issue a written ruling on the merits. The State Board issued the requested Declaratory Ruling on August 2, 2024, determining that the guidance in the Numbered Memo reflected a correct application of the law. Compl. ¶¶ 39-40 [DE 1-3]; Ex. C [DE 1-4, pp. 26-50].

In considering Plaintiffs' challenge to the guidance in the Numbered Memo, the State Board unanimously agreed that ballots sealed in the outer return envelope rather than the inner ballot envelope are still valid because they "are received in a sealed envelope" as required under N.C. Gen. Stat. § 163-230.1(d).[5] Ex. C, pp. 6, 23 [DE 1-4, pp. 32, 49].

The Declaratory Ruling emphasizes that the Materiality Provision of the Civil Rights Act further bolsters this reading of state law:

> [I]n these circumstances, strictly enforcing a requirement for a voter to seal their ballot in only the inner envelope when the ballot is nonetheless sealed in the outer envelope and the voter is otherwise qualified to vote **would violate federal law**.

Ex. C, pp. 17-18 (emphasis added) [DE 1-4, pp. 43-44]. Stated further in the Declaratory Ruling, "No person acting under color of law shall . . . deny the right of any individual to vote in any

---

[4] The Request also sought a declaratory ruling on other questions, which are not mentioned in the Complaint and therefore not recited here.

[5] The State Board went on to explain that statutes involving the container-return envelope must be read in conjunction with other requirements for voting absentee by mail (e.g., the voter ID law). *See* Ex. C, p. 14 (citing *Schroeder v. City of Wilmington*, 282 N.C. App. 558, 568, 872 S.E.2d 58, 65 (2022) (explaining that provisions of a statute should be construed together to "harmonize such statutes, if possible, and give effect to each") [DE 1-4, p. 40].

8

election because of "*an error or omission on any record or paper relating to any application, registration, or other act requisite to voting*, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." Ex. C, p. 18 (emphasis in original) (citing 52 U.S.C. § 10101(a)(2)(B) [DE 1-4, p. 44]. Sealing one's ballot in one envelope traveling with the absentee ballot versus another, explained the State Board, "is 'an error or omission' on a 'record or paper relating to an[] application . . . or other act requisite to voting.'" Ex. C, p. 18 [DE 1-4, p. 44]. Where a voter has otherwise complied with the requirements establishing their voting qualifications (via the absentee request form and completed ballot application form) and their identity (via these same items *plus* photo ID documentation), whether the inner envelope is sealed is "not material in determining whether such individual is qualified under State law to vote." *Id.* Therefore,

> Given the clear prohibitory language employed by the federal law, which controls over state law and the State Board's and county boards' implementation of state law, U.S. Const. art. VI, cl. 2; N.C. Const. art. I, § 5, county boards should not reject a ballot in the circumstances described above.

*Id*.

### ii. Plaintiffs sue the State Board.

Plaintiffs commenced this suit by filing their Petition and Complaint in Wake County Superior Court on September 3, 2024. [DE 1-3] Defendants accepted service on September 10, 2024. [DE 1-10] On September 24, 2024, the North Carolina Alliance for Retired Americans (Alliance) moved to intervene as a Defendant. [DE 1-13].

Defendants timely removed the litigation to federal court pursuant to 28 U.S.C. §§ 1443(2) and 1446. [DE 1-1] On October 14, 2024, Plaintiffs moved to remand the case to Wake County Superior Court, and the next day moved the Court for expedited briefing on their motion to remand.

[DE 16, DE 18] On October 16, 2024, this Court allowed the Alliance's permissive intervention and issued an expedited briefing schedule on Plaintiffs' motion to remand.

## ARGUMENT

### I. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) should be granted if, accepting all well-pleaded allegations as true, the complaint is not legally and factually sufficient. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). The court need not accept as true a complaint's legal conclusions, elements of a cause of action, or conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, where plaintiffs can prove no set of facts in support of their claim that would entitle them to relief under the law, their complaint should be dismissed under Rule 12(b)(6). *See, e.g., Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 317 (4th Cir. 2006).

### II. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Even accepting all of Plaintiffs' factual allegations as true, Plaintiffs have not stated a claim that entitles them to relief under the law. Plaintiffs seek to reverse the State Board's Declaratory Ruling upholding the Numbered Memo under N.C. Gen. Stat. § 150B-43, the judicial review provision of North Carolina's Administrative Procedure Act. Compl. ¶ 54 [DE 1-3]. That statute allows courts to reverse an agency's final decision where, as relevant here, the action is "[i]n excess of the statutory authority . . . of the agency." N.C. Gen. Stat. § 150B-51(b)(2); *see* Compl. ¶¶ 55-57 (alleging that the Declaratory Ruling conflicts with Chapter 163 of the General Statutes) [DE 1-3]. Here, the State Board's interpretation of N.C. Gen. Stat. § 163-231 is correct, particularly when read alongside 52 U.S.C. § 10101(a)(2)(B), and the

guidance issued in the State Board's Numbered Memo thus reflects the accurate and proper application of the law. Because the Numbered Memo does not exceed the State Board's statutory authority, Plaintiffs can prove no set of facts that would entitle them to the relief they seek.

    **A.    North Carolina's Voter ID Law Necessitates a Two-Envelope Ballot Package for Absentee Voters.**

Since well before North Carolina began requiring voters to include photo ID documentation with an absentee ballot, state law has described the format that absentee-ballot packages must take and the steps that a voter must take in submitting an absentee ballot. *See, e.g.*, N.C. Gen. Stat. §§ 163-231, -229. The relevant provisions repeatedly reference a "container-return envelope" and impose different requirements with respect to that "envelope." For example,

- N.C. Gen. Stat. § 163-229(b) lists items the county boards are required (and prohibited) from printing on the container-return envelope. For instance, "[e]ach container-return envelope shall have printed on it an application which shall be designed and prescribed by the State Board". The State Board "shall prohibit the display of the voter's party affiliation on the outside of the container-return envelope." N.C. Gen. Stat. § 163-229(b).

- N.C. Gen. Stat. § 163-230.1(d) instructs that the "application shall be completed and signed by the voter personally, the ballots marked, the ballots sealed in the container-return envelope, and the certificate completed as provided in G.S. 163-231."

- N.C. Gen. Stat. § 163-231(a)(3) requires absentee voters to, "[i]n the presence of two persons who are at least 18 years of age, and who are not disqualified by G.S. 163-226(a)(4) or G.S. 163-237(c), . . . [p]lace the folded ballots in the container-return envelope and securely seal it, or have this done in the voter's presence."

- N.C. Gen. Stat. § 163-231(a) then states that the "sealed container-return envelope, with

11

the ballots enclosed, shall be transmitted . . . to the county board of elections which issued the ballots."

Prior to implementation of North Carolina's voter ID law, the references in each of these laws to a "container-return envelope" were clear: they referenced the single envelope printed and sent to the voter by the county board of elections, which the voter then used to return their absentee ballot.

Following implementation of the voter ID requirement, however, absentee voters must necessarily use *two* envelopes to transmit absentee ballots to their county board of elections. This outcome follows inexorably from the fact that voters are now required to include a photocopy of a photo ID (or a photo ID exception form) with their marked ballots. *See* N.C. Gen. Stat. § 163-230.1(f1). This photo ID documentation must be separate from the ballot it accompanies, and it must be visible to county election officials *before* they actually open the envelope containing the absentee ballot. The county boards must first determine if the application may be approved, and only after they do so may they open the envelope and remove the ballot. N.C. Gen. Stat. §§ 163-230.1(e), (f), and (f1), 163-234(3). Meanwhile that photo ID documentation must remain shielded from public view. *See* N.C. Gen. Stat. §§ 163-82.10(a1), 163-233(a).

It follows that to comply with all of these distinct requirements, the "container-return envelope" must now necessarily consist of two separate envelopes: an inner, ballot envelope to contain an absentee voter's marked ballot, and an outer return envelope to contain the inner envelope and shield the requisite voter identification documentation.

### B. The Numbered Memo Challenged by Plaintiffs Reflects the Appropriate and Proper Interpretation of State and Federal Law.

Plaintiffs can prove no set of facts showing that the State Board's Declaratory Ruling

upholding the Numbered Memo exceeds the State Board's statutory authority. Given the necessity of a two-envelope absentee ballot package occasioned by North Carolina's voter ID requirement, the Numbered Memo appropriately harmonizes North Carolina's absentee ballot and voter ID statutes with the statutes providing for the protection of voters' personal information. Even if the Numbered Memo were inconsistent with state law, the Numbered Memo would not exceed the State Board's authority because the guidance provided therein is necessary to ensure that county boards of elections do not discard absentee ballots in violation of the Civil Rights Act. *See Marcellus v. Va. State Bd. of Elections*, 849 F.3d 169, 175 (4th Cir. 2017) (discussing the federal courts' obligation to ensure that state election administration comports with federal law). Because Plaintiffs cannot show that the State Board exceeded its statutory authority,[6] this Court should dismiss Plaintiffs' claim.

The Numbered Memo is consistent with state law. The State Board is required to provide guidance to county boards regarding election administration. N.C. Gen. Stat. § 163-22(c) ("The State Board shall advise the county boards of elections as to the proper methods of conducting primaries and elections."). And the General Assembly specifically tasked the State Board with providing guidance to implement the voter ID requirements for absentee voters. *Id*. § 163-230.1(g) ("The State Board, by rule or by instruction to the county board of elections, shall establish procedures to provide appropriate safeguards in the implementation of this section."). The Numbered Memo at issue in this case does precisely that. Its subject line is "Absentee Container-Return Envelope Deficiencies," Ex. A, p. 1 [DE 1-4, p. 3], and it specifically instructs trained county board staff to "review each return envelope, executed ballot envelope, and photo

---

[6] For the same reasons, Plaintiffs can prove no set of facts showing that the State Board's Declaratory Ruling upholding the Numbered Memo was based on an error of law or arbitrary, capricious, or an abuse of discretion. *See* N.C. Gen. Stat. § 150B-51(b)(4), (6).

13

ID documentation the office receives to determine if there are any deficiencies," Ex. A, p. 2 [DE 1-4, p. 4]. The Numbered Memo explains to county board officials that,

> with the implementation of photo ID requirements starting with the 2023 municipal elections, the ballot envelope is now transmitted to the county board in an outer return envelope to ensure the privacy of the accompanying photo ID documentation. As a result, there may be certain instances where the return of the absentee ballot requires the ballot to be spoiled and the absentee package reissued to the voter.

Ex. A, p. 3 [DE 1-4, p. 5].

The Numbered Memo goes on to distinguish between deficiencies that require the ballot to be spoiled and those anomalies that do not constitute deficiencies. Since N.C. Gen. Stat. § 163-230(d)(1) requires that ballots must be "sealed in the container-return envelope," the Memo instructs county board staff that ballots received in an <u>unsealed</u> ballot envelope (or a ballot envelope that appears to have been opened and re-sealed) and an <u>unsealed</u> outer return envelope (or an outer envelope that appears to have been opened and re-sealed) are deficient and require the ballot to be spoiled. Ex. A, p. 3 [DE 1-4, p. 5].

However, if a ballot is received in an unsealed, inner ballot envelope, but the ballot envelope is inside a sealed outer, return envelope, that ballot is not deficient. Ex. A, pp. 3-4 [DE 1-4, pp. 5-6]. Similarly, if a ballot is not placed in the ballot envelope, or is placed in the clear sleeve on the ballot envelope used for including the photo ID documentation, but the outer return envelope is sealed, the ballot is not deficient. Ex. A, p. 4 [DE 1-4, p. 6]. In challenging this guidance, Plaintiffs seem to ignore that both scenarios comply with the requirement that transmitted ballots be "sealed in the container-return envelope" outlined in N.C. Gen. Stat. § 163-230.1(d).

County board staff, not county board officials, process the intake of ballots at each county board of elections. Ex. A, p. 2 [DE 1-4, p. 4]. After intake, staff perform an initial review for

deficiencies. *Id.* "The initial review is conducted by staff to expedite processing of the envelopes in advance of a county board absentee meeting." *Id.* County board staff are instructed to review absentee ballots on each business day, to the extent possible, "to ensure that voters have every opportunity to timely correct deficiencies." *Id.* (citing N.C. Gen. Stat. § 163-230.1(e), which requires the county boards to "promptly notify the voter of the deficiency and the manner in which the voter may cure the deficiency.")

In the event a staff member, during this initial review, opens the outer return envelope and notices that the ballot envelope inside is unsealed, the Numbered Memo instructs staff to immediately re-seal the return envelope with a notation of "sealed in return envelope." Ex. A, p. 4 [DE 1-4, p. 6]. The County Board then shall address the ballot at its next absentee meeting. *Id.; see also* 08 NCAC 17 .0109 (allowing for initial review by board staff followed by final review by county board to ensure compliance with North Carolina's voter ID requirements).

Plaintiffs contend that the Numbered Memo directs the county boards of elections "to take actions that directly conflict with Chapter 163 of the North Carolina General Statutes." Compl. ¶ 58 [DE 1-3]. Specifically, Plaintiffs allege that the Numbered Memo "advises county boards of elections that an absentee ballot may be counted even if it is not submitted in a sealed container-return envelope." Compl. ¶ 8 [DE 1-3]. But that bare allegation is not supported by the text of the Numbered Memo that Plaintiffs attached as an exhibit to their Complaint. Thus, this Court need not credit it. *See Hamby v. Seterus, Inc.*, No. 7:15-cv-125-FL, 2016 U.S. Dist. LEXIS 30904, at *6-7 (E.D.N.C. Feb. 18, 2016) (citing *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) ("In the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c) . . . the exhibit prevails.")).

In fact, the Numbered Memo does the opposite. It does not require the acceptance of a

ballot that arrives completely unsealed, but rather instructs county boards to spoil a ballot if it arrives in an unsealed ballot envelope and an unsealed return envelope. Ex. A, p. 3 [DE 1-4, p. 5]. On the other hand, a ballot received in a sealed outer return envelope, even if the inner ballot envelope is not sealed, satisfies N.C. Gen. Stat. § 163-230.1(d) and should not be rejected. Ex. A, p. 4 [DE 1-4, p. 6].

Because the Numbered Memo (and thus the Declaratory Ruling upholding it) is consistent with state law, Plaintiffs can prove no set of facts that would entitle them to declaratory judgment.

Even if Plaintiffs could demonstrate that the Numbered Memo conflicts with state law, their claim would be fatally flawed. That is because the Numbered Memo's guidance is necessary to ensure that county boards of elections comply with federal law. The Civil Rights Act of 1964 prohibits any person, acting under the color of law, from denying the right of any individual to vote in any election because of an "error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B).

For example, in *Martin v. Crittenden*, 347 F. Supp. 3d 1302 (N.D. Ga. 2018), the district court concluded that Georgia election officials' rejection of absentee ballots based solely on omitted or erroneous birth year likely violates the materiality provision of the Civil Rights Act. Georgia's absentee voter law requires a voter to sign an oath certifying the validity of the enclosed ballot, which is returned in the two-envelope package used for absentee voting. *Id.* at 1306. The oath includes a space for the voter to list their date of birth. *Id.* (citing O.C.G.A. § 21-2-384). The district court determined that "a voter's ability to correctly recite his or her year of

16

birth on the absentee ballot envelope is not material to determining said voter's qualifications under Georgia law," and therefore could not be strictly enforced without running afoul of 52 U.S.C. § 10101(a)(2)(B). *Id.* at 1308-09. Accordingly, the district court enjoined the election officials from rejecting absentee ballots containing an error or omission relating to the absentee voter's year of birth and ordered such votes to be counted. *Id.* at 1311.

The same district court found that Georgia election officials violated the materiality provision of the Civil Rights Act when they rejected voter registration forms that did not include the voter's full social security number. *Schwier v. Cox*, 412 F. Supp. 2d 1266 (N.D. Ga. 2005). While the court agreed that requiring a voter's full SSN could help prevent voter fraud (presumably the purpose behind the requirement), it held that disclosing one's SSN "cannot be material in determining whether that person is qualified to vote under Georgia law" where federal law (here, the Privacy Act, 5 U.S.C. § 552a) prohibits the state from requiring such disclosure. *Id.* at 1276-77.

Similarly, in *Ford v. Tenn. Senate*, No. 06-2031 D V, 2006 U.S. Dist. LEXIS 118780 (W.D. Tenn. Feb. 1, 2006), the district court held that plaintiffs were entitled to a declaratory judgment that ballots could not be rejected solely because a voter failed to comply with a "technical requirement" to sign both an application form and the poll book. *Id*. at *34-36. If a voter signed either the application or the poll book, that voter had "signed an oath, under penalty of perjury, that she is whom she says she is," and the failure to sign in both places constituted an error or omission that was immaterial to the election administrator's assessment of her eligibility to vote. *Id.* at *34-35.[7]

---

[7] The district court also rejected the argument that the Civil Rights Act does not apply to the counting of votes but only to determining eligibility to vote, noting that the Civil Rights Act "explicitly provides that the word 'vote' includes all action necessary to make a vote effective

17

Even if failing to seal an inner envelope placed inside an otherwise sealed, outer return envelope is an error under state law, it constitutes an immaterial "error or omission" on a "record or paper relating to an[] application, registration, or other act requisite to voting." 52 U.S.C. § 10101(a)(2)(B). The inner envelope is the absentee ballot "application." N.C. Gen. Stat. § 163-229(b); *see* 163-230.1(e), (f) (referring to "application" and "envelope" interchangeably). The approval of the application is requisite to casting a person's vote. N.C. Gen. Stat. § 163-230.1(e), (f); *id.* § 163-234(3).When a voter has otherwise complied with the requirements establishing their voting eligibility and identity through the absentee request form, completed application, and photo ID documentation, any potential error or omission in sealing the ballot in one envelope versus another, when the materials all arrive at the county board in a sealed return envelope, is "not material in determining whether such individual is qualified under State law to vote." 52 U.S.C. § 10101(a)(2)(B).

Given the clear prohibition set forth in the Civil Rights Act, the State Board's guidance in its Numbered Memo was the only guidance the Board could have offered without running afoul of federal law. Directing county boards to spoil ballots and discard votes simply because those ballots failed to arrive inside of *two* sealed envelopes would have violated the materiality provision. The allegations in Plaintiffs' Complaint to the contrary therefore fail to state a claim.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that their motion to dismiss Plaintiffs' Complaint under Rule 12(b)(6) be granted.

---

including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted . . . ." *Id.* at *35-36 (quotations and citation omitted).

18

Respectfully submitted this 16th day of October 2024.

> JOSHUA H. STEIN
> ATTORNEY GENERAL
>
> /s/ Laura H. McHenry
> Laura H. McHenry
> Special Deputy Attorney General
> Bar No. 45005
> lmchenry@ncdoj.gov
>
> /s/ Mary Carla Babb
> Mary Carla Babb
> Special Deputy Attorney General
> Bar. No. 25731
> mcbabb@ncdoj.gov
>
>
> North Carolina Dept. of Justice
> Post Office Box 629
> Raleigh, N.C. 27602
> Tele No.: (919) 716-6900
> Fax No.: (919) 716-6763
>
> *Counsel for State Board Defendants*

# CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this memorandum of law is in compliance with Local Rule 7.2(f)(3) in that the brief, including headings, footnotes, citations, and quotations, contains no more than 8,400 words as indicated by Microsoft Word, the word processing program used to prepare the brief.

This the 16th day of October, 2024.

/s/ Laura H. McHenry
Laura H. Mchenry
Special Deputy Attorney General
