UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-cv-578

| | |
|---|---|
| VIRGINIA WASSERBERG, NORTH CAROLINA REPUBLICAN PARTY, and REPUBLICAN NATIONAL COMMITTEE,<br><br>Plaintiffs,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS, et al.,<br><br>Defendants,<br><br>and<br><br>NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS,<br><br>Intervenor Defendant. | **STATE BOARD DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO REMAND** |

Defendants North Carolina State Board of Elections, et al. (State Board Defendants) hereby respond in opposition to Plaintiffs' Motion to Remand this case to the North Carolina Superior Court of Wake County.

## **INTRODUCTION**

State Board Defendants have met their burden to establish federal jurisdiction and have demonstrated that removal is proper under 28 U.S.C. § 1443(2). Plaintiffs' motion to remand should be denied.

Section 1443(2) confers removal privileges on a defendant when that defendant is sued for refusing to do any act on the ground that it would be inconsistent with laws providing for equal

rights. 28 U.S.C. § 1443(2). Plaintiffs' own allegations reveal that Defendants have met that burden here. Plaintiffs allege that State Board Defendants refused to take an action (i.e., reverse its guidance to county boards of elections) on the grounds that the requested action conflicted with the Materiality Provision of the Civil Rights Act, a federal law providing for equal rights. *See* Compl. ¶ 59 [DE 1-3]. Therefore, this Court has removal jurisdiction over Plaintiffs' claim pursuant to § 1443(2).

## BACKGROUND

Under state law, when a voter requests an absentee ballot, county boards must respond by sending the voter a package containing, among other items: (1) an official ballot, and (2) a "container-return envelope" for the ballot. N.C. Gen. Stat. § 163-230.1(a). Before the General Assembly passed the voter ID law, it was possible for a "container-return envelope" to consist of a single envelope. After passage of the voter ID law, however, a two-envelope system became necessary for absentee-ballot return. *See Defs' Br.* pp. 5, 12 [DE 22]. *See also* N.C. Gen. Stat. § 163-230.1(f1). This is because, under state law, an absentee voter's photo ID documentation must be separate from the ballot it accompanies and must be visible to county election officials before they open the envelope containing the absentee ballot. N.C. Gen. Stat. § 163-234(3) (only permitting the ballot envelope to be opened and the ballot removed once the application is approved). Meanwhile, the photo ID documentation must be shielded from public view. *See* N.C. Gen. Stat. §§ 163-82.10(a1), -233(a).

Consistent with these requirements, now, when a voter requests an absentee ballot, the voter receives two envelopes with their absentee ballot: an inner ballot envelope used to contain the absentee voter's marked ballot and absentee application, and an outer envelope to contain the

inner envelope and to shield the requisite photo ID documentation from public view. *Defs' Br.* p. 12 [DE 22].

This shift from the long-utilized single absentee ballot envelope to a two-envelope system presented the possibility of new potential errors or inconsistencies in the ways these envelopes were returned. Under state law, the State Board is required to provide a cure process for deficiencies associated with returned absentee ballots. It therefore revised one of its prior Numbered Memos (specifically, Numbered Memo 2021-03[1]) to provide guidance for elections officials related to the sealing of the inner and outer envelopes in the two-envelope package.[2] Compl. ¶ 32, Ex. A, pp. 3-4 [DE 1-3; DE 1-4]

The Numbered Memo instructs county boards not to treat as deficient those absentee ballots that arrive in a sealed outer envelope, even if the inner envelope is unsealed. [DE 1-4] The Numbered Memo does <u>not</u> require county boards to automatically count those ballots; it simply advises the county boards that those ballots are not deficient. Those ballots, and the materials accompanying them, are still assessed to ensure compliance with all relevant voting laws, including those designed to prevent voter fraud. *See* N.C. Gen. Stat. §§ 163-166.16(g), -230.1(g). The Numbered Memo goes on to explain that this interpretation of N.C. Gen. Stat. § 163-231 is the only reading of state law that complies with the Materiality Provision of the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B).

On September 3, 2024, Plaintiffs sued Defendants in North Carolina Superior Court of Wake County, alleging that revised Numbered Memo 2021-03, conflicts with N.C. Gen. Stat. §

---

[1] Numbered Memo 2021-03 was initially issued on June 11, 2021, before North Carolina's voter ID law went into effect. The subject line of the memo reads, "Absentee Container-Return Envelope Deficiencies."

[2] Revised Numbered Memo 2021-03 is attached as Exhibit A to Plaintiffs' Complaint [DE 1-4].

163-231, a state law that requires absentee ballots be returned in a sealed "container-return" envelope. On October 9, 2024, Defendants removed the suit, pursuant to 28 U.S.C. § 1443(2). Shortly thereafter, on October 14, 2024, Plaintiffs moved to remand the case back to state court. Defendants moved to dismiss the suit on October 16, 2024.

## ARGUMENT

### I. Legal Standard

Federal law allows a defendant to remove certain claims originally brought in state court to federal court. *King v. Marriott Int'l, Inc.*, 337 F.3d 421, 424 (4th Cir. 2003). One well-established scenario when a case can be removed from state court to federal district court is when the claim is based on the state official's refusal to act in a manner that would be inconsistent with a federal law providing for equal rights. 28 U.S.C. § 1443(2). As Plaintiff correctly observes, this provision of the removal statutes is commonly referred to as the Refusal Clause. *Pls' Br. p.* 10 [DE 17]. Defendants bear the burden of demonstrating that removal is proper. *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296-97, 299 (4th Cir. 2008).

### II. Defendants Have Met Their Burden to Demonstrate that This Court Has Jurisdiction over Plaintiffs' Claim and that Removal Is Proper.

When state officials are sued in state court for their refusal to take an action, and their refusal is based on a "law providing for equal rights," § 1443(2) allows the officials to remove the suit to federal court. 28 U.S.C. § 1443(2). The Civil Rights Act of 1964 is unquestionably "a law providing for equal rights" under 28 U.S.C. § 1443(2). *Georgia*, 384 U.S. at 792-93. Therefore, where defendants who are state officials perform an act (or refuse to perform an act) based on their application of the Civil Rights Act—specifically here 52 U.S.C. § 10101(a)(2)(B)—then removal of a lawsuit challenging that action (or refusal to act) to federal court is proper. This is precisely the case before the Court today.

### A. Plaintiffs' claim is premised on their allegation that State Board Defendants refused to take an action – i.e., reverse the guidance issued in a Numbered Memo.

Because Defendants are indisputably state officials, the first question this Court must resolve is whether they have "refus[ed] to do any act." 28 U.S.C. § 1443(2) Plaintiffs contend that Defendants have failed to make such a showing. *Pls' Br.* p. 9 [DE 17]. But Plaintiffs' own allegations demonstrate otherwise.

In their Complaint, Plaintiffs assert they submitted a request for a declaratory ruling from the State Board Defendants.[3] Compl. ¶¶ 36-38, Ex. B [DE 1-3; DE 1-4]. In that request, Plaintiffs challenged State Board Defendants' guidance in Numbered Memo 2021-03, which instructed county boards not to treat as deficient those absentee ballots that arrive in a sealed outer envelope, even if the inner envelope is unsealed. [DE 1-3; DE 1-4]. After holding a hearing to consider Plaintiffs' position, the State Board Defendants concluded that their guidance reflected a correct application of the law. The State Board thus voted unanimously to reject Plaintiffs' request and refused to modify. Compl. ¶ 40, Ex. C [DE 1-3; DE 1-4]. This unanimous vote—and the accompanying rejection of Plaintiffs' request to revise the Numbered Memo—constitute the refusal to act required by § 1443(2).

### B. Defendants refused to commit the act Plaintiffs requested because doing so would be inconsistent with the Civil Rights Act (a law providing for equal rights).

Defendants have also established that their refusal to act was based on a "law providing for equal rights," as required by § 1443(2). The Materiality Provision of the Civil Rights Act provides:

> No person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record of paper relating to any application, registration, or other act requisite to voting, if such error or

---

[3] Under N.C. Gen. Stat. § 150B-4, an aggrieved person may request a state agency to issue a declaratory ruling as to the validity of a rule or the applicability of a statute administered by the agency to a given set of facts.

> omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B). In its order rejecting Plaintiffs' request for a declaratory ruling, the State Board expressly invoked this provision to justify its refusal to revise its guidance. Specifically, the State Board explained that "strictly enforcing a requirement for a voter to seal their ballot in only the inner envelope when the ballot is nonetheless sealed in the other envelope" would violate "prohibitory language employed by the federal law," because "[s]ealing one's absentee ballot in one envelope traveling with the absentee ballot versus another is 'an error or omission' on a 'record or paper relating to an application . . . or other act requisite to voting.'" Ex. C. p 18 [DE 1-4] (quoting 52 U.S.C. § 10101(a)(2)(B)). In other words, the State Board concluded that revising the Numbered Memo to comply with Plaintiffs' preferred reading of state law would violate the Materiality Provision—a provision in a "law providing for equal rights"—and, on that basis, refused to act.

As an initial matter, Plaintiffs cannot—and do not seem to—dispute that the Civil Rights Act is a "law providing for equal rights." The U.S. Supreme Court has explained that the Civil Rights Act "is clearly a law conferring a specific right of racial equality." *Georgia v. Rachel*, 384 U.S. 780, 792 (1966). For that reason, the Supreme Court has held, the Civil Rights Act plainly qualifies as a "law providing for equal rights" within the meaning of 28 U.S.C. § 1443. *Id.* at 793.

Instead, Plaintiffs argue that the Materiality Provision does not *require* "Defendants provide any guidance to anyone about anything," *Pls' Br.* p. 12 [DE 17]. This argument misunderstands the central issue here. Defendants do not contend that they were *required* by the Materiality Provision to issue, or subsequently revise, the Numbered Memo. Defendants contend that the Materiality Provision was the basis on which they necessarily had to "refus[e] to . . . act"

in response to Plaintiffs' request to modify the Numbered Memo. Again, this puts the challenged inaction by the State Board squarely within the scope of § 1443(2).

Plaintiffs next cite *Common Cause v. Lewis*, 358 F. Supp. 3d 505, 513 (E.D.N.C. 2019), *aff'd*, 956 F.3d 246 (4th Cir. 2020), to resist this conclusion. As Plaintiffs understand *Common Cause*, that case requires an inconsistency "between (a) an 'act,' which is compelled by state law but which a defendant refuses to commit, and (b) a federal law that prohibits the 'act.'" *Pls' Br.* p. 11 [DE 17] (citing *Common Cause v. Lewis*, 358 F. Supp. 3d 505, 513 (E.D.N.C. 2019), *aff'd*, 956 F.3d 246 (4th Cir. 2020)). Respectfully, this is not what *Common Cause* says. In fact, it says the opposite. There, the district court expressly rejected the notion that the Refusal Clause requires "a colorable conflict between state and federal law." *Common Cause*, 358 F. Supp. 3d at 513 (quoting *White v. Wellington*, 627 F.2d 582, 587 (2d Cir. 1980)). As the court explained, that interpretation "is a stretch of the language of the removal statute, which references in its text inconsistency only between <u>the act</u> being refused and federal equal protection law." *Id.* This case presents exactly the kind of conflict the *Common Cause* court required: The State Board Defendants have refused to modify their absentee-ballot guidance, as Plaintiffs would prefer, based on an "inconsistency" between any such state action and the Materiality Provision.[4]

Finally, Plaintiffs argue that the Materiality Provision should not have prevented the State Board Defendants from revising the Numbered Memo because that provision governs only "errors

---

[4] *Common Cause* also involved a readily distinguishable situation to the one present here. In *Common Cause*, North Carolina *legislators* sought to remove the case to federal court. The court resisted the idea that legislators—who *enact* laws, as opposed to *enforcing* them—could ever invoke the Refusal Clause. *Common Cause*, 358 F. Supp. 3d at 510-11; *see also Common Cause v. Lewis*, 956 F.3d 246, 255 (4th Cir. 2020) (noting that state legislators do not enforce state laws and therefore fall outside the purview of the Refusal Clause). This case, which involves executive officials tasked with enforcing the State's elections laws, does not present an analogous situation.

7

or omissions made during the initial stage of the voting process—when a voter registers to vote." *Pls' Br.* p. 13 [DE 17] This argument fails.

By its plain terms, the Materiality Provision's reach is not limited to voter registration, but rather applies to "any record or paper relating to any application, registration or other act requisite to voting . . ." 52 U.S.C. § 10101(a)(2)(B). If this provision were meant to apply only to voter registration, the plain text would not have included acts beyond "registration." The phrase "other act requisite to voting" must have some meaning. *See generally Kadel v. N.C. State Health Plan Teachers & State Emps.*, 12 F.4th 422, 442 (4th Cir. 2021) (citing *United States v. Simms*, 914 F.3d 229, 241 (4th Cir.), *cert. denied,* 140 S. Ct. 304 (2019) (explaining that the court cannot adopt a reading of a statute that renders part of it superfluous over one that gives effect to its every clause and word).

Plaintiffs' reading of the Materiality Provision also conflicts with the Civil Rights Act, which explicitly provides,

> The word "vote" includes all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast with respect to candidates for public office and propositions for which votes are received in an election.

52 U.S.C. § 10101(e).

Not surprisingly, federal courts have routinely held that the Materiality Provision, true to its text and the definition of "vote" in the Civil Rights Act, applies not only to voter registration but to any "act requisite to voting." 52 U.S.C. § 10101(a)(2)(B).

For example, in *Martin v. Crittenden*, 347 F. Supp. 3d 1302 (N.D. Ga. 2018), the district court concluded that election officials' rejection of absentee ballots based solely on an omitted or

erroneous birth year listed on an envelope[5] violated the Materiality Provision because the voter's birth year was not necessary to confirm the voter's identity or, accordingly, the voter's qualifications to vote under state law. *Id.* at 1308. The voter's identity, the court explained, has already been confirmed through the absentee ballot process. *Id.* at 1309. Therefore, an error or omission related to the absentee ballot return envelope was immaterial and could not be rejected by election officials. *Id.* at 1308-09.

Similarly, in *Ford v. Tenn. Senate*, No. 06-2031 D V, 2006 U.S. Dist. LEXIS 118780 (W.D. Tenn. Feb, 1, 2006), the district court held that election officials could not reject a ballot solely because a voter failed to comply with a statutory requirement that the voter sign both the application form and the poll book. *Id.* at *34-36. The court determined that if a voter signed either the application or the poll book, then that voter had signed an oath, under penalty of perjury, confirming her identify and her failure to comply with a technical requirement was an error or omission immaterial to the election administrator's assessment of her eligibility to vote. *Id.* at 34-35.

In neither *Martin* nor *Ford* did the courts limit their application of the Materiality Provision to voter registration, as Plaintiffs suggest. Instead, the courts applied the provision to other acts requisite to voting – including anomalies that might arise in the process of casting one's ballot.

*Pennsylvania State Conference of NAACP Branches v. Secretary Commonwealth of Pennsylvania*, 97 F.4th 120 (3d Cir.), *reh'g & reh'g en banc denied*, 2024 U.S. App. LEXIS 7300, *12 (3d Cir. Apr. 30, 2024), upon which Plaintiff relies, does not change this analysis. There, the state supreme court had already ruled that the failure to properly date the declaration on a voter's mail-in ballot rendered the ballot invalid under State law. *Id.* at 128 (citing *Ball v. Chapman*, 289

---

[5] In *Martin*, just as here, a voter who requests an absentee ballot receives two envelopes.

9

A.3d 1, 20-23 (Pa. 2022)). This distinction matters, as does the fact that the decision seems to flout the legislative intent behind the Materiality Provision. In passing the statute, Congress sought to prohibit States' practice of implementing arbitrary procedures that naturally resulted in increased errors that could then be used as an excuse not to count certain voters' ballots. *See id*. at 138; *Martin*, 347 F. Supp. 3d at 1308. A reading of the Materiality Provision that artificially cabins its scope undermines Congress's purpose in passing the law. For that reason, the Third Circuit's decision is outweighed by the many other precedents that, consistent with congressional intent, read the Materiality Provision more broadly.

### C. Defendants are not required to show that state law would compel them to discriminate on account of race or color.

Plaintiffs' final argument is that the Refusal Clause does not apply because the absentee-ballot laws do not compel Defendants to "discriminate on account of race or color." *Pls' Br.* p. 14-17 [DE 17]. This position relies on either a misstatement or a misunderstanding of the test for removal under § 1443(2). Section 1443 permits removal when a requested action—not a state statute—is inconsistent with any law providing for equal rights. *Cavanagh v. Brock*, 577 F. Supp. 176, 180 (E.D.N.C. 1983) (quoting *Greenwood v. Peacock*, 384 U.S. 808, 824 n.22 (1966)). Nothing in the text of § 1443(2) suggests that its application requires a discriminatory state law. Instead, the text requires only that (1) a state official (2) refuse to act (3) on the basis that the requested action would be inconsistent with (4) a law providing for equal rights. 28 U.S.C. § 1443(2).

As explained above, all of these requirements are satisfied here. The State Board Defendants, first, are indisputably state officials. Second, they have refused to act—and revise their guidance on absentee-ballot deficiencies—in response to Plaintiffs' request for a declaratory

10

ruling. Third, they based this refusal on their understanding of the Materiality Provision, which bars state officials from "deny[ing] the right of any individual to vote" "because of an [immaterial] error or omission on any record or paper relating to any application, registration, or other act requisite to voting." 52 U.S.C. § 10101(a)(2)(B). Spoiling a ballot based on whether or not an internal envelope is sealed would amount to an "error or omission on a[ ] record or paper relating to . . . [an] act requisite to voting." *Id.* And, fourth, the Materiality Provision is unquestionably part of a "law providing for equal rights." 28 U.S.C. § 1443(2); *see also Georgia v. Rachel*, 384 U.S. 780, 792 (1966). In cases like this one, where the § 1443(2) criteria are plainly satisfied, courts have consistently allowed removal. *See Smith v. Winter*, 717 F.2d 191, 194 (5th Cir. 1983); *Jackson v. Riddell*, 476 F. Supp. 849 (N.D. Miss. 1979).

Removal under § 1443(2) was proper here and this Court should deny Plaintiffs' motion to remand to state court.

## CONCLUSION

Based on the foregoing reasons, the State Board Defendants respectfully request that the Court deny Plaintiffs' motion to remand.

This the 21st day of October, 2024.

JOSHUA H. STEIN
ATTORNEY GENERAL

/s/ Laura H. McHenry
Laura H. McHenry
Special Deputy Attorney General
Bar No. 45005
lmchenry@ncdoj.gov

Mary Carla Babb
Special Deputy Attorney General
Bar. No. 25731
mcbabb@ncdoj.gov

11

Terence Steed
Special Deputy Attorney General
Bar No. 52809
tsteed@ncdoj.gov

North Carolina Dept. of Justice
Post Office Box 629
Raleigh, N.C. 27602
Tele No.: (919) 716-6900
Fax No.: (919) 716-6763

*Counsel for State Board Defendants*

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this memorandum of law complies with Local Rule 7.2(f)(3) in that the brief, including headings, footnotes, citations, and quotations, contains no more than 8,400 words as indicated by Microsoft Word, the word processing program used to prepare the brief.

This the 21st day of October, 2024.

/s/ Laura H. McHenry
Laura H. McHenry
Special Deputy Attorney General
