IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-00578-M

| | |
|---|---|
| VIRGINIA WASSERBERG, NORTH CAROLINA REPUBLICAN PARTY, and REPUBLICAN NATIONAL COMMITTEE,<br><br>Plaintiffs,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS, et al.,<br><br>Defendants,<br><br>and<br><br>NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS,<br><br>Intervenor-Defendant. | **PLAINTIFFS' REPLY TO RESPONSES OF DEFENDANTS AND INTERVENOR-DEFENDANT TO PLAINTIFFS' MOTION TO REMAND** |

## INTRODUCTION

Just six days ago, this Court held in *Republican Nat'l Cmte. v. N.C. State Bd. of Elections*, 5:24-cv-547, 2024 WL 4523912 (E.D.N.C. Oct. 17, 2024) ("*RNC*"), that a defendant's claim that it refused to do something because of the Materiality Provision, 52 U.S.C. § 10101(a)(2)(B), cannot support removal under 28 U.S.C. § 1443(2)'s Refusal Clause. Yet, the North Carolina State Board of Elections (the "NCSBE" or the "Board")[1] has attempted to remove this case under the Refusal

---

[1] References in this brief to the NCSBE or the Board include all the so-called "State Board Defendants." (*See* NCSBE Resp. [D.E. 30] at 1.)

Clause by claiming that the Board refused to do something because of the Materiality Provision. The law has not, however, changed since the Court's October 17, 2024, ruling in *RNC*. Consequently, for the reasons provided by the Court in *RNC* and some additional ones discussed in Plaintiffs' original memorandum of law and this reply, the Court should remand this case.

## ARGUMENT

### I. This litigation is based on the NCSBE's acts, not a refusal to act.

All parties agree that to remove under the Refusal Clause, the NCSBE must show that, among other things, it is being sued "for refusing to do" a certain kind of act. 28 U.S.C. § 1443(2). But it was an act—rather than a refusal to act—by the NCSBE that triggered this lawsuit. Specifically, this lawsuit would not have been filed but for the NCSBE's act of issuing a Numbered Memo that plainly contradicts North Carolina law. It was this act that triggered a process, mandated by the North Carolina Administrative Procedures Act, through which Plaintiffs first requested a declaratory ruling and then sought judicial relief by filing this action. *See* N.C. Gen. Stat. § 150B-4(a) & (a)(2); Complaint [D.E. 1-3] ¶ 54. The Court should not accept the mischaracterization of the Board's Declaratory Ruling as some sort of refusal to act when the ruling instead constituted an affirmance of the Board's original act in issuing the Numbered Memo.

Notably, the NCSBE, which bears the burden of proving removal is proper, does not cite a single case for its argument that its actions were not actions but instead constituted a refusal to act. In its response brief, the North Carolina Alliance for Retired Americans (the "NCARA") spends much time identifying irrelevant

2

Case 5:24-cv-00578-M-RN   Document 31   Filed 10/23/24   Page 2 of 12

distinctions between this lawsuit and those cases cited in Plaintiffs' original brief, but like the NCSBE, the NCARA cites no case that supports its argument that the NCSBE is being prosecuted for a refusal to act.

## II. There is no colorable conflict between some refusal to act by the NCSBE and the Materiality Provision.

### A. The NCSBE's Burden

The NCARA argues that Plaintiffs have applied the wrong standard for determining an "inconsistency with" federal law in the context of the Refusal Clause. (NCARA Resp. [D.E. 29] at 9.) But Plaintiffs agree with the NCARA that, "[t]o remove a case under § 1443(2), the defendant must have a good faith belief that following the plaintiff's interpretation of state law would violate federal law, *which is tested objectively*." (*Id.* (citing *White v. Wellington*, 627 F.2d 582, 587 (2d Cir. 1980) (omitting NCARA's emphasis & emphasizing other language).) Plaintiffs also agree with the NCARA that removal cannot be based on some "subjective belief" of a conflict with a federal law. (*Id.* (citing *Taylor v. Currie*, 386 F. Supp. 2d 929, 937 (E.D. Mich. 2005).) Instead, "[t]he 'good faith belief' is to be tested objectively; defendants cannot simply assert an unsupportable subjective belief that they are being asked to violate federal law." *Taylor*, 386 F. Supp. 2d at 936.

Where the parties part ways here is on the question of whether the NCSBE's alleged belief was, in fact, objectively reasonable.[2] As discussed in Plaintiffs' first

---

[2] The NCARA alleges that "Plaintiffs *do not dispute* the Board's good faith belief that their requested relief would conflict with the materiality provision." (NCARA Resp. at 13 (emphasis in original).) In fact, Plaintiffs take no position at this point on whether the NCSBE believed such a conflict existed, but do, as noted above, contend

3

brief and below, the Materiality Clause plainly does not apply. Therefore, it has never been objectively reasonable for the NCSBE to believe that some act required by North Carolina's container-return envelope statutes (the "CRE Statutes") is "inconsistent with" the Materiality Provision.

The NCARA complains that, "Plaintiffs seek to force this Court to decide at the earliest stage of this litigation whether Plaintiffs' interpretation of § 163-231(a)(3) is definitely inconsistent with the materiality provision." (NCARA Resp. at 9.) But the NCSBE apparently has no issue with the Court doing so. The Board did not, for example, make this argument in its response brief in opposition to the Motion to Remand. And just one week after removing this case, the NCSBE filed a motion to dismiss. [D.E. 21.] In that motion and a supporting memorandum, the NCSBE seeks a resolution "at the earliest stage of this litigation"—based on nothing more than the record presently before the Court—of whether the Materiality Provision precludes enforcement of the CRE Statutes as written. (*See* Mot. to Dismiss [D.E. 21], ¶ 1 & Mem. of Law in Support of Mot. to Dismiss [D.E. 22] at 1, 16-18 (asserting that the NCSBE's interpretation of the CRE Statutes "is the only possible reading of the statute that would not violate the materiality provision").)

### B. The CRE Statutes are not subject to the Materiality Provision.

Between them, the NCARA and NCSBE cite several cases in an attempt to show that the Materiality Provision applies in this case. Significantly, none of the

---

that no matter how the Board came to its alleged belief, that belief has never been objectively reasonable.

cases involved the question of whether the Materiality Provision would be violated by a state official's decision not to count an absentee ballot received in an unsealed container-return envelope (or other special ballot envelope). Instead, the cases addressed whether the decision to reject a ballot cast by a voter <u>who failed to provide certain, statutorily required information</u> violated the Materiality Provision. *See, e.g., La Union Del Pueblo Entero v. Abbott*, 705 F. Supp. 3d 725, 751 (W.D. Tex. 2023) (requirement that voter provide an ID number), *stayed pending appeal sub nom. United States v. Paxton*, No. 23-50885 (5th Cir. Dec. 15, 2023); *In re Ga. Senate Bill 202*, No. 1:21-mi-55555, 2023 WL 5334582, at *1 (N.D. Ga. Aug. 18, 2023) (requirement that voter provide birthdate); *Vote.org v. Ga. State Election Bd.,* 661 F. Supp. 3d 1329, 1334 (N.D. Ga. 2023) (requirement that voter sign an oath in pen and ink); *Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1304 (N.D. Ga. 2018) (requirement that voter provide birth year); *Ford v. Tenn. Senate*, No. 06-2031, 2006 WL 8435145, at *11 (W.D. Tenn. Feb. 1, 2006) (requirement that voter sign application and poll book), *appeal dismissed*, 469 F3d 500 (6th Cir. 2006).[3]

The NCARA's cases do not demonstrate that the Materiality Provision applies. In fact, they confirm that the provision <u>does not</u> apply. As some of the cases noted: The Materiality Provision "was intended to address the practice of requiring unnecessary information for voter registration with the intent that such

---

[3] The NCARA also cited *League of Women Voters of Ark. v. Thurston*, No. 5:20-cv-05174, 2023 WL 6446015, at *16-18 (W.D. Ark. Sept. 29, 2023), *Common Cause v. Thomsen*, 574 F. Supp. 3d 634, 638-39 (W.D. Wisc. 2021), and *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1172-75 (11th Cir. 2008), which all held that the Materiality Provision did not apply to the state laws at issue in those cases.

requirements would increase the number of errors on the application forms, thus providing an excuse to disqualify potential voters." *Martin*, 347 F. Supp. 3d at 1308 (cleaned up); *see also Common Cause v. Thomsen*, 574 F. Supp. 3d 634, 639 (W.D. Wisc. 2021) (same). Indeed, the statute covers only "an error or omission <u>on</u> any record or paper." 52 U.S.C. § 10101(a)(2)(B) (emphasis added). Yet, the question in this case is not whether a voter's failure to provide any information on any record or paper implicates the Materiality Provision. It is whether a voter's failure to seal a container-return envelope does. Under the provision's plain text, it does not.

The NCARA argues that the container-return envelope is a kind of "application" covered by the Materiality Provision. (NCARA Resp. at 3, 13.) It is true that an application must be printed on the container-return envelope. N.C. Gen. Stat. § 163-229(b). That does not mean, however, that the application is covered by the Materiality Provision, and Plaintiffs deny that it is covered. Regardless, the failure to properly seal an envelope is not the same thing as a failure to write statutorily required information in the application printed on the envelope's exterior. The NCSBE and NCARA have not cited any cases to suggest otherwise.

The NCARA and NCSBE also attack *Pa. State Conf. of NAACP Branches v. Sec. of Commonwealth of Pa.*, 97 F.4th 120 (3d Cir.) ("*Pa. NAACP*"), *reh'g & reh'g en banc denied*, 2024 WL 3085152 (3d. Cir. Apr. 30, 2024). In a misguided effort to diminish *Pa. NAACP*, the NCARA contends that the opinion was issued by a "divided panel" and the case adopted "a view that no other circuit has adopted." (NCARA Resp. at 11.) Yet, the NCARA neglects to note that the Third Circuit rejected a

6

Case 5:24-cv-00578-M-RN    Document 31    Filed 10/23/24    Page 6 of 12

subsequent petition to hear the matter en banc, and the NCARA fails to cite *any* U.S. Court of Appeals decision that has even addressed the question considered in *Pa. NAACP*, much less taken a position different from the Third Circuit. *Pa. NAACP* is not, in fact, the only case to conclude that the requirements for casting a ballot are not subject to the Materiality Provision. *See, e.g., Liebert v. Mills*, No. 23-cv-672, 2024 WL 2078216, at *10-11 (W.D. Wisc. May 9, 2024) (collecting cases); *Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1372-73 (S.D. Fla. 2004).

In an argument that is not fully or clearly explained, the NCARA contends the Third Circuit committed "two major textual errors" by allegedly (i) rendering the Materiality Provision's language regarding "an act requisite to voting" "superfluous" and (ii) somehow improperly limiting the otherwise purportedly broad scope of the definition of "vote" in the Civil Rights Act of 1964. (NCARA Resp. at 12-13.) The NCSBE also makes these arguments. (NCSBE Resp. [D.E. 30] at 8-9.) The same arguments were, however, raised by the plaintiffs and dissent in *Pa. NAACP* and decisively refuted by the court there. *See Pa. NAACP*, 97 F.4th at 131-33, 138-39.

Finally, the NCARA argues that, "Plaintiffs do not dispute that the relief they seek would require denying the right to vote by discarding absentee ballots based on errors that have no bearing on a voter's qualifications." (NCARA Resp. at 2, 24.) The NCARA is wrong. "[A] voter who fails to abide by state rules prescribing how to make a vote effective is not denied the right to vote when his ballot is not counted." *Pa. NAACP*, 97 F.4th at 133 (cleaned up); *see id.* ("[W]e know of no authority that the 'right to vote' encompasses the right to have a ballot counted that is defective."); *see*

7

*also id.* at 133-35; *Liebert*, 2024 WL 2078216, at *16 n.13. The CRE Statutes are plainly state rules that prescribe how to make a vote effective. Thus, a voter is not denied the right to vote when a ballot is not counted due to a failure to comply with the CRE Statutes. Accordingly, the relief sought by Plaintiffs does not deny any voter the right to vote.

> C. **<u>The Materiality Provision is not "stated in terms of racial equality."</u>**

For purposes of a Refusal Clause removal, it is not enough that a defendant's refusal to act is compelled by just any federal law. It must be compelled by a law that is "stated in terms of racial equality." *State of Ga. v. Rachel*, 384 U.S. 780, 792 (1966); *Vlaming v. West Point Sch. Bd.*, 10 F.4th 300, 309 (4th Cir. 2021).

The NCARA argues that the Materiality Provision "was enacted to address pernicious forms of *racial* discrimination in voting." (NCARA Resp. at 14; *see also id.* at 14-16.). And the NCSBE contends that, "Plaintiffs cannot—and do not seem to—dispute that the Civil Rights Act is a 'law providing for equal rights.'" (NCSBE Resp. at 6.)[4] These arguments are irrelevant. The correct inquiry under *Rachel*, as this Court held just last week, is whether the specific provision upon which the NCSBE attempts to base its removal is "stated in terms of racial equality":

> The test is not whether Defendants refused to act on the basis of a provision of law that is contained within a larger statute that has several purposes, one of which being racial equality. The test is whether the refusal to act was based on a law that is "stated in terms of racial equality."

---

[4] The NCARA claims, on the other hand, that Plaintiffs have "argu[ed] that the materiality provision is not an anti-discrimination statute." (NCARA Resp. at 14.)

8

*RNC*, 2024 WL 4523912, at *18 (quoting *Rachel*, 384 U.S. at 792). "Laws 'phrased in terms of general application available to all persons or citizens,' and not in 'specific language of racial equality,' do not grant removal jurisdiction under Section 1443. *Id.* at *17 (quoting *Rachel*, 384 U.S. at 792).

The NCSBE and NCARA incorrectly suggest that *Rachel* holds that *any* reference to *any* provision of the Civil Rights Act of 1964 (the "1964 Act") can support removal. But the removing party in *Rachel* was threatened with prosecution that would violate Section 201(a) of the 1964 Act—the public accommodations provision—<u>not the Materiality Provision</u>. *Rachel*, 384 U.S. at 792-94. Critically, Section 201(a), codified as 42 U.S.C. § 2000a(a), was and still is specifically "stated in terms of racial equality"—unlike the Materiality Provision. Section 201(a) provides as follows:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, <u>without discrimination or segregation on the ground of race, color,</u> religion, or national origin."

42 U.S.C. § 2000a(a) (emphasis added); *see also Rachel*, 384 U.S. at 793 n.20.

The NCARA claims that under *Vlaming*, a removing party can simply invoke any part of the 1964 Act and remove under the Refusal Clause. *Vlaming* is, however, even more distinguishable from this case than *Rachel*. The removing party in *Vlaming* did not cite any part of the 1964 Act as a basis for removal; it instead attempted to rely on Title IX, 20 U.S.C. § 1681. *Vlaming*, 10 F.4th at 305, 308-09. Furthermore, the entire point of *Vlaming* is that the Refusal Clause's reference to civil rights laws "must be construed to mean any law providing for specific civil rights <u>stated in terms of racial equality</u>." *Vlaming*, 10 F.4th at 309 (quoting *Rachel*, 384

9

U.S. at 792) (emphasis added). It would make no sense, then, to read the *Vlaming* court's passing references to the 1964 Act, which are dicta, in a manner wholly inconsistent with the rest of the opinion, as the NCARA urges this Court to do.

In short, the Materiality Provision is not a federal law upon which a removal under the Refusal Clause can be based. *RNC*, 2024 WL 4523912, at *19.[5]

### III. The CRE Statutes do not compel the NCSBE (or anyone else) to discriminate "on account of race or color."

As Plaintiffs noted in their first brief, under the Refusal Clause, "the privilege of removal is conferred only upon state officers who refuse to enforce state laws discriminating on account of race or color." *Common Cause v. Lewis,* 358 F. Supp. 3d 505, 511 (E.D.N.C. 2019) (cleaned up), *aff'd,* 956 F.3d 246 (4th Cir. 2020); *see also* Plfs. Mem. [D.E. 17] at 14-15 (collecting cases). Cases cited by the NCARA in an attempt to support its "colorable conflict" arguments confirm that the state law at issue must compel the defendants to discriminate on the basis of race: *White,* 627 F.2d at 586 ("[T]he statute may be invoked when the removing defendants make a colorable claim that they are being sued for not acting <u>pursuant to a state law which, though facially neutral, would produce or perpetuate a racially discriminatory result as applied</u>." (cleaned up & emphasis added); *Cappitelli v. Hoskins*, No. 88 C 5075, 1988 WL 96347, at *3 (N.D. Ill. Sept. 9, 1988) (same); *Bridgeport Educ. Ass'n v.*

---

[5] Following its argument that the Materiality Provision can support a removal under the Refusal Clause, the NCSBE cites *Smith v. Winter*, 717 F.2d 191, 194 (5th Cir. 1983), and *Jackson v. Riddell*, 476 F. Supp. 849 (N.D. Miss. 1979). Neither case involved the Refusal Clause or the Materiality Provision, and both cases found remand was proper. *See Smith*, 717 F.2d at 194; *Jackson*, 476 F. Supp. at 858-62.

10

*Zinner*, 415 F. Supp. 715, 722 (D. Conn. 1976) (same). *See RNC*, 2024 WL 4523912, at *18 ("[T]he party seeking removal must cite a civil rights statute that deals in terms [of] racial equality *and* make some showing that their refusal to act actually involves considerations of racial equality or discrimination." (Court's emphasis.)).

The CRE Statutes do not, however, compel the NCSBE or anyone else to discriminate on the basis of race or color. And not surprisingly, neither the NCSBE nor the NCARA has made <u>any</u> attempt to show that enforcement of the CRE Statutes "would produce or perpetuate a racially discriminatory result as applied." For this and the other reasons identified by Plaintiffs, the Court should remand this case.

Respectfully submitted, this the 23rd day of October 2024.

/s/ Thomas G. Hooper
Thomas G. Hooper
Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C.
101 South Tryon Street, Suite 3600
Charlotte, NC 28280
Ph: (980) 256-6300
thooper@bakerdonelson.com
N.C. State Bar No. 25571
*Attorney for Plaintiffs*

/s/ John E. Branch III
John E. Branch III
Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C.
2235 Gateway Access Point, Suite 220
Raleigh, NC 27607
Ph: (984) 844-7900
jbranch@bakerdonelson.com
N.C. State Bar No. 32598
*Attorney for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send electronic notification of the filing to all counsel who have filed notices of appearance in this case.

This, the 23rd day of October 2024.

/s/ Thomas G. Hooper
Thomas G. Hooper
Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C.
101 South Tryon Street, Suite 3600
Charlotte, NC 28280
Phone: (980) 256-6300
thooper@bakerdonelson.com
N.C. State Bar No. 25571

*Attorney for Plaintiffs*