UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-cv-578

| | |
|---|---|
| VIRGINIA WASSERBERG, NORTH CAROLINA REPUBLICAN PARTY, and REPUBLICAN NATIONAL COMMITTEE,<br><br>Plaintiffs,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS, et al.,<br><br>Defendants,<br><br>and<br><br>NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS,<br><br>Intervenor Defendant. | **STATE BOARD DEFENDANTS' RESPONSE TO COURT'S ORDER TO SHOW CAUSE** |

On October 28, 2024, this Court ordered the parties to show cause why the Court should not remand this matter to state court for want of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c). Specifically, the Court ordered the parties to address whether the Complaint alleges a concrete and particularized injury sufficient to confer Article III standing. [DE 33] State Board Defendants hereby submit their response to the Court's Order. If, notwithstanding this response, the Court decides to remand this case to state court, State Board Defendants respectfully ask this Court to stay any such remand order pending disposition of an appeal to the U.S. Court of Appeals for the Fourth Circuit.

## INTRODUCTION

Plaintiffs have sufficiently alleged a concrete and particularized injury to confer Article III standing. Accordingly, this case meets the jurisdictional threshold for federal subject matter jurisdiction, and remand pursuant to 28 U.S.C. § 1447(c) is not appropriate.

Plaintiffs contend that State Board Defendants' actions (or more specifically, their refusal to act) have caused and will continue to cause harm absent judicial intervention. Compl. ¶ 58 [DE 1-3]. They assert that the State Board's actions have created an "actual, real, presently existing, concrete and justiciable controversy" by issuing guidance to county boards that, in Plaintiffs' view, conflicts with state law. Compl. ¶ 57. Plaintiffs sufficiently allege that the State Board's challenged action impedes their core organizational activities, Compl. ¶ 14, thus satisfying the elements of organizational standing, such that this Court has subject matter jurisdiction to hear Plaintiffs' claim.

## BACKGROUND

Absentee ballots are returned by voters to their county board of elections in a two-envelope package to accommodate North Carolina's absentee voting requirements and the state's voter ID law, which went into effect in April 2023. Anticipating that this new two-envelope process could result in uncertainty for county boards receiving absentee ballots, the State Board revised Numbered Memo 2021-03 ("the Numbered Memo") to explain whether certain errors in the sealing of the envelopes constituted a deficiency requiring the absentee ballot to be spoiled and reissued, or whether the errors did not constitute a deficiency. This guidance was based on the State Board's interpretation and application of state and federal law. Compl. Ex. A [DE 1-4].

Prior to filing the Complaint, Plaintiffs requested a declaratory ruling from the State Board. Plaintiffs asked the State Board to modify the Numbered Memo to align it with Plaintiffs'

interpretation of the relevant requirements in N.C. Gen. Stat. §§ 163-229, -230.1, and -231. Compl. Ex. B [DE 1-4]. State Board Defendants refused to make the requested modifications. In its declaratory ruling, the State Board explained that applying these statutes in the manner Plaintiffs requested would run afoul of the Materiality Provision of the Civil Rights Act, 52 U.S.C. § 10101(a)(2). Compl. Ex. C [DE 1-4] Specifically, the State Board explained that "strictly enforcing a requirement for a voter to seal their ballot in only the inner envelope when the ballot is nonetheless sealed in the outer envelope" would violate the "prohibitory language employed by the federal law," because "[s]ealing one's absentee ballot in one envelope traveling with the absentee ballot versus another is 'an error or omission' on a 'record or paper relating to an application . . . or other act requisite to voting.'" Compl. Ex. C, p. 18 [DE 1-4 at p. 44] (quoting 52 U.S.C. § 10101(a)(2)(B)).

Plaintiffs then filed suit in state court seeking a declaratory judgment that the State Board's Numbered Memo conflicts with the requirement in N.C. Gen. Stat. § 163-231 that absentee ballots be returned to the county boards in a sealed container-return envelope. Plaintiffs also sought preliminary and permanent injunctive relief. [DE 1-3, p. 15]

State Board Defendants removed the case to federal district court pursuant to 42 U.S.C. § 1443(2). [DE 1-1] Plaintiffs moved the court to remand the case back to state court, and the parties fully briefed that motion. [DE 16, DE 17, DE 29, DE 30, DE 31] On October 28, 2024, this Court issued an order requiring the parties to show cause why the Court should not remand the case for lack of subject matter jurisdiction. [DE 33] The question of remand is now before the Court and ripe for determination.

## DISCUSSION

### I. Plaintiffs Have Sufficiently Alleged Article III Standing.

Article III of the Constitution restricts judicial power to those cases and controversies that will redress or prevent actual or imminently threatened injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009). "The doctrine of standing is one of several doctrines that reflect this fundamental limitation." *Id.* at 493. *See also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "It requires federal courts to satisfy themselves that 'the plaintiff has alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction." *Summers,* 555 U.S. at 493 (citing *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)) (internal quotations omitted).

"To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)); *see also Spokeo*, 578 U.S. at 338. Like an individual plaintiff, a plaintiff-organization may also establish Article III standing if it alleges these three components. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) ("*Hippocratic Medicine*") (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (finding a plaintiff-organization may bring suit for injuries it sustains as a result of a defendant's actions if it sufficiently demonstrates the elements of Article III standing: injury in fact, caused by the defendant, that can be redressed by a favorable decision from the court.)). "This requirement assures that 'there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Id.* at 493. (citing *Schlesinger v. Reservists*

*Comm. to Stop the War*, 418 U.S. 208, 221 (1974)). "Where that need does not exist, allowing courts to oversee legislative or executive action 'would significantly alter the allocation of power . . . away from a democratic form of government.'" *Id.* (citing *United States v. Richardson*, 418 U.S. 166, 188 (1974)); *see also Spokeo*, 578 U.S. at 338.

Here, Plaintiffs' Complaint adequately alleges each of the three components of Article III standing: injury in fact, causation, and redressability.

1. **Injury in Fact**

"Injury in fact is a constitutional requirement, and it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo*, 578 U.S. at 339 (internal quotations and citation omitted). Therefore, invocation of a federal statute must be paired with an allegation of injury in fact to confer Article III standing in federal court. *See id.* at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation."); *see also Summers*, 555 U.S. at 496 ("deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing").

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). "For an injury to be 'particularized,' it must 'affect the plaintiff in a personal, individual way.'" *Id.* To be concrete, an injury must "actually exist," i.e., the injury must be "real, and not abstract." *Id.* at 340 (internal quotations and citations omitted). It would exceed Article III's limitations if federal courts were to "entertain citizen suits to vindicate the public's nonconcrete interest in the proper administration of the laws." *Summers*, 555 U.S. at 497 (quoting

5

*Lujan*, 504 U.S. at 580-81) (Kennedy, J., concurring in part and concurring in judgment). Put simply, "[t]he party bringing suit must show that the action injures him in a concrete and personal way." *Id.*

To satisfy the injury-in-fact element of organizational standing, a plaintiff-organization must plead that the defendant's actions "perceptibly impair[ ]" the organization's "core business activities." *Havens Realty*, 455 U.S. at 378-79; *All. for Hippocratic Med.*, 602 U.S. at 394; *see also Republican Nat'l Comm. v. N.C. State Bd. of Elections*, No. 24-2044, 2024 U.S. App. LEXIS 27415, at *6-7 (4th Cir. Oct. 29, 2024) (recognizing that when an action "perceptibly impairs" an organization's ability to carry out its mission and consequently drains the organization's resources, there can be no question that the organization has suffered an injury in fact (quoting *N.C. State Conf. of the NAACP v. Raymond*, 981 F.3d 295, 301 (4th Cir. 2020)). An organization cannot "spend its way into standing," *Hippocratic Medicine*, 602 U.S. at 394, with a unilateral and uncompelled choice to expend or divert resources on new activities in response to the defendant's action. *Raymond*, 981 F.3d at 301; *see also Hippocratic Medicine*, 602 U.S. at 395 (rejecting plaintiffs' theory that standing exists whenever an organization diverts its resources in response to a defendant's action).

Comparing the facts of *Havens Realty* with those in *Hippocratic Medicine* helps to illustrate this doctrine in practice. The plaintiffs in *Havens Realty* were three individuals who sought housing in Henrico County, Virginia, ("renter plaintiffs") and an organization—Housing Opportunities Made Equal ("HOME")—whose purpose was "to make equal opportunity in housing a reality in the Richmond Metropolitan area." 455 U.S. at 367-68. To advance this mission, HOME offered a housing counseling service, among other things. *Id.* at 368.

Defendants owned and operated two apartment complexes in Henrico County. *Id*. The individual plaintiffs each inquired about the availability of an apartment at one of the two apartment complexes. The two Black renter-plaintiffs were falsely told that no apartments were available, while the white renter-plaintiff was told there were apartments available. *Id.*

The plaintiff-organization asserted that, in addition to the harm caused to its members, HOME also suffered an injury because defendants' discriminatory conduct "frustrated the organization's counseling and referral services, with a consequent drain on resources." *Id.* at 369. Because HOME's customers were not receiving accurate information about the housing options available to them, HOME's ability to accurately counsel customers about securing housing was impaired. *Id.* The Supreme Court held that, if, as HOME alleged, defendants' unlawful racial steering practices had "perceptibly impaired" the business's ability to provide counseling and referral services to its members, "there can be no question that the organization has suffered injury in fact." *Id.* at 379.

In contrast, the plaintiff-organizations in *Hippocratic Medicine* alleged standing based on costs they had incurred in response to the FDA's actions relaxing regulation of mifepristone. 602 U.S. at 394. The plaintiff-organizations argued they had pled an injury in fact sufficient to confer Article III standing because the FDA's actions had forced them to expend considerable time, energy, and resources to draft citizens petitions to the FDA and engage in public advocacy and public education. *Id.* The Supreme Court distinguished this alleged organizational injury from the one in *Havens Realty*, explaining that plaintiffs cannot "manufacture standing" simply by spending money in response to government action. *Id.* Whereas in *Havens Realty*, HOME alleged harm to its *preexisting* core business activities, the *Alliance* plaintiffs relied on their need to divert

7

resources to *new* business activities in response to the FDA's actions. *Id.* This kind of diversion, the Supreme Court held, could not satisfy Article III. *Id.*

This case more closely resembles *Havens Realty* than *Hippocratic Medicine* for two reasons. First, like HOME (and unlike the plaintiff-organizations in *Hippocratic Medicine*), Plaintiffs here assert harm to their core business activities, as opposed to their abstract goals or objectives. Plaintiffs allege that, in addition to supporting Republican candidates running in North Carolina elections, the NCGOP and RNC "make[ ] considerable expenditures in this state" to recruit, train, and appoint at-large election observers and "educate[ ] voters on the laws that govern the voting process in North Carolina." Compl. ¶¶ 12-14. The State Board's alleged unlawful guidance, Plaintiffs say, has "harmed" and "will continue to irreparably harm" Plaintiffs' ability to undertake these core activities, because, they say, that guidance "directly conflicts with Chapter 163 of the North Carolina General Statutes." *Id.* ¶ 58. In other words, just as providing false information about apartment availability was sufficient to allege a frustration of HOME's core business activity—its ability to provide counseling and referral services for prospective renters—Plaintiffs allege that the State Board's guidance allegedly frustrates the NCGOP and RNC's self-identified core business activities—their ability to train and educate voters and election observers on the laws governing North Carolina elections and whose votes should be counted. Compl. ¶ 14 [DE 1-3].

Second, unlike the plaintiffs in *Hippocratic Medicine*, Plaintiffs are not trying to "spend [their] way into standing," 602 U.S. at 394. They do not rely on an argument that the costs of opposing the State Board's guidance confer standing. *Cf. id.* at 395. Indeed, if that theory of standing (which was advocated for by plaintiff-organizations in *Hippocratic Medicine*) were sufficient to confer Article III standing, "all the organizations in America would have standing to

8

challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies." *Id.* Plaintiffs do not allege any specific expenditure or seek redress related to those costs. Instead, Plaintiffs ask the Court to order State Board Defendants to modify the guidance contained in the Numbered Memo interpreting N.C. Gen. Stat. § 163-231 and instruct county boards not to count certain absentee ballots (even though, as the State Board has explained, not counting those ballots would violate the Materiality Provision of the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B)). Compl. ¶ 61.b.[DE 1-3] Modified guidance would, in turn, clarify the information that Plaintiffs ultimately share with voters as part of their training and educational materials. *Id.* at ¶ 14. Because Plaintiffs' alleged injury goes beyond the diversion of resources to new business activities, Plaintiffs have organizational standing under Article III.

### 2. Causation

The second element of Article III standing is that the plaintiff's injury must be traceable to the defendant's challenged action. *Summers,* 555 U.S. at 493; *Spokeo*, 578 U.S. at 338. This element is easily met here. Plaintiffs allege that their injury results directly from the State Board's guidance to county boards in the form of the Numbered Memo. Compl. ¶ 58 [DE 1-3]. *Compare Friends of the Earth,* 528 U.S. at 181-83 (concluding plaintiffs had organizational standing because they averred that they were persons for whom the aesthetic and recreational value of the North Tyger River was diminished because of the defendant's challenged action—i.e., discharged pollution) *and Bishop v. Bartlett*, 575 F.3d 419, 425 (4th Cir. 2009) (finding plaintiff's allegations failed to make a causal connection between the harm and the challenged action but instead could be traced to "the independent action of some third party not before the court" (citation omitted)). Here, Plaintiffs adequately allege that their injury is fairly traceable to the action of the State Board that they challenge. They have therefore satisfied Article III's causation requirement.

### 3. Redressability

Finally, to meet the third element of Article III standing, a plaintiff must allege that a favorable decision will prevent or redress the injury suffered. *Summers*, 555 U.S. at 493; *Spokeo*, 578 U.S. at 338. "An injury is redressable if it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Disability Rights S.C. v. McMaster*, 24 F.4th 893, 903 (4th Cir. 2022) (internal quotations and citation omitted). A plaintiff's burden to establish redressability is not onerous and requires only a showing that the plaintiff would personally "benefit in a tangible way from the court's intervention." *Id.*

Here, Plaintiffs allege that a favorable ruling on their claim would abate the harm caused by the State Board's allegedly improper guidance. Compl. ¶ 58. *Cf. Friends of the Earth*, 528 U.S. at 185-86 (concluding that the imposition of civil penalties would satisfy the redressability element because "a sanction that effectively abates [the challenged] conduct and prevents its recurrence provides a form of redress to plaintiffs). A ruling in Plaintiffs' favor would address the injury that they allege is caused by the State Board's refusal to modify the Numbered Memo. Accordingly, all elements of Article III standing are met and this Court has subject matter jurisdiction over Plaintiff's claim.

### II. The Court Should Not Remand this Matter to State Court for Lack of Subject Matter Jurisdiction.

Because Plaintiffs have standing under Article III, this Court has subject matter jurisdiction and therefore cannot—and should not—remand this case to state court.

If, however, the Court determines that Plaintiffs lack standing, it should dismiss—not remand—Plaintiffs' Complaint. "Not all removal statutes are created equal." *Thompson v. Army & Air Force Exchange*, No. 22-cv-2799-SMY, 2023 U.S. Dist. LEXIS 9597, *6 (S.D. Ill. Jan 19, 2023). Most cases are removed because they fall under the original jurisdiction of federal courts.

*See* 28 U.S.C. § 1441(a). But Congress has recognized that the federal government has unique interests in cases involving federal officers, 28 U.S.C. § 1442, and civil rights, 28 U.S.C. § 1443. *See Willingham v. Morgan*, 395 U.S. 302, 406 (1969) (discussing strong federal interest in protecting federal officers from local prejudices); *Georgia v. Rachel*, 384 U.S. 780, 789-90 (1966) (same for civil-rights laws).

Given these unique interests, several courts, in cases that have been removed to federal court pursuant to § 1442, have concluded that "dismissal is appropriate if the court lacks subject matter jurisdiction due to plaintiff's lack of standing." *Thompson*, 2023 U.S. Dist. LEXIS 9597, at *6; *see also Greene v. Citigroup, Inc.*, 215 F.3d 1336 (Table) (10th Cir. 2000); *Int'l Primate v. Adm'r of Tulane Educ. Fund*, 22 F.3d 1094 (5th Cir. 1994) (Table); *Tyus v. U.S. Postal Serv.*, No. 15-cv-1467, 2017 U.S. Dist. LEXIS 833, at *11 (E.D. Wis. Jan. 4, 2017). These courts have reached that conclusion notwithstanding § 1447(c)'s command to remand cases when subject matter jurisdiction is lacking. *Tyus*, 2017 U.S. Dist. LEXIS 833, at *11; *Maine Ass'n of Interdependent Neighborhoods v. Petit*, 644 F. Supp. 81, 83 (D. Me. 1986). The reason is simple: a contrary rule would allow a plaintiff to "frustrate[]" the important federal interests that Congress identified in passing § 1442 simply by deliberately pleading short of Article III standing. *Petit*, 644 F. Supp. at 85.

The same is true for § 1443. Remanding this case because Plaintiffs have not established Article III standing would undermine Congress's decision to provide a federal forum for civil-rights cases and would create perverse incentives for plaintiffs moving forward. *Cf. Republican Nat'l Comm.*, 2024 U.S. App. LEXIS 27415, at *36 n.1 (Diaz, C.J., concurring) (noting the strangeness of "plaintiffs sheepishly suggesting that they hadn't pleaded enough to stay in federal court"). The civil-rights removal statute reflects Congress's determination that federal courts are

11

sometimes best positioned to protect civil rights, at least those designed to promote racial equality. *Rachel*, 384 U.S. at 789-90.

This case falls squarely within the category of cases that Congress believed should be heard in federal court. After all, Plaintiffs challenge a Declaratory Ruling of the State Board that expressly relied on 52 U.S.C. § 10101(a)(2)—the Materiality Provision of the Civil Rights Act. As the Fourth Circuit held just yesterday, there is "no doubt that the Materiality Provision is a law protecting against racially discriminatory voting practices and 'providing for equal rights' within the meaning of Section 1443(2)." *Republican Nat'l Comm.*, 2024 U.S. App. 27415, at *33 (majority opinion).

Remanding for lack of standing in a case that so obviously falls within § 1443's ambit would teach future plaintiffs that they can thwart Congress's clear direction by artfully pleading facts that fall short of Article III standing, but satisfy the lower threshold for standing that applies in some States. *See Comm. to Elect Dan Forest v. Emps. Political Action Comm.*, 376 N.C. 558, 601, 853 S.E.2d 698, 729 (2021). In other words, remanding for lack of standing here would allow plaintiffs to use standing principles as a sword to deprive defendants of the federal forum they are otherwise guaranteed in civil-rights cases. The Supreme Court itself has previously expressed doubt that plaintiffs resisting removal can leverage Article III standing this way. *See Int'l Primate Prot. League v. Adm'r of Tulane Educ. Fund*, 500 U.S. 72, 78 n.4 (1991) ("We therefore leave open the question whether a federal court in a § 1442(a)(1) removal case may require plaintiffs to meet Article III's standing requirements with respect to [the plaintiff's] state-law claims . . . ."). This Court should not allow Plaintiffs to do so.

### III. In the Event This Court Orders Remand, State Board Defendants Respectfully Request a Stay of that Order Pending Resolution of an Appeal.

For the reasons above, and the reasons discussed in the Defendants' responses to Plaintiffs' Motion to Remand [DE 29, DE 30], the Court should not remand this matter to state court. Plaintiffs' allegations satisfy the elements of Article III standing. This Court therefore has subject matter jurisdiction, and removal was proper pursuant to § 1443(2).

If, however, this Court orders remand, 28 U.S.C. § 1447(d) carves out an exception to the general rule barring appellate review of a remand order for any cases in which removal was based on 28 U.S.C. § 1443(2). Appellate review under § 1447(d) extends to "the whole" of a "district court's remand order—without any further qualification." *BP P.L.C. v. Mayor of Balt.*, 593 U.S. 230, 238-39 (2021). Therefore, an order of remand constitutes a "judgment" subject to the automatic stay under Fed. R. Civ. P. 62(a). *See Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, No. 1:16-cv-534, 2016 U.S. Dist. LEXIS 78864, at *2 (E.D. Va. June 16, 2016) (holding removing party was entitled to a Rule 62(a) automatic stay on execution of the remand order pursuant to 28 U.S.C. § 1447(d)).

In addition to an automatic stay pursuant to Rule 62(a), State Board Defendants also request a stay of any remand order pending resolution of an appeal. *See Nken v. Holder*, 556 U.S. 418, 421 (2009) (acknowledging that a federal court can stay the enforcement of an order to hold a ruling in abeyance to allow an appellate court the time necessary to review it). A stay pending appeal is appropriate because (1) defendants are likely to succeed on appeal; (2) defendants will be irreparably injured absent a stay; (3) a stay would impose no substantial harm on plaintiffs; and (4) the public interest overwhelmingly favors a stay. *See Nken*, 556 U.S. at 434 (enumerating these four factors to be considered on a motion to stay pending appeal); *see also Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970).

13

State Board Defendants make this request out of an abundance of caution, since this Court may opt to resolve Plaintiffs' remand motion without holding a hearing. Appellate Rule 8 provides that a party must first move in the district court for a stay of an order pending appeal. Fed. R. App. P. 8(a). Thus, State Board Defendants respectfully and conditionally move for a stay of any order to remand pending resolution of a forthcoming appeal.

## **CONCLUSION**

For the reasons above, the State Board Defendants respectfully ask this Court to find that Plaintiffs' allegations demonstrate they have Article III standing, that this Court has subject matter jurisdiction over this matter, and that removal to federal court was proper under 42 U.S. § 1443(2). In the event this Court orders remand, State Board Defendants respectfully request the Court stay that order pending appeal.

This the 30th day of October, 2024.

/s/ Laura H. McHenry
Laura H. McHenry
Special Deputy Attorney General
Bar No. 45005
lmchenry@ncdoj.gov

/s/ Mary Carla Babb
Mary Carla Babb
Special Deputy Attorney General
Bar. No. 25731
mcbabb@ncdoj.gov

North Carolina Dept. of Justice
Post Office Box 629
Raleigh, N.C. 27602
Tele No.: (919) 716-6900
Fax No.: (919) 716-6763

*Counsel for State Board Defendants*

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this memorandum of law complies with Local Rule 7.2(f)(3) in that the brief, including headings, footnotes, citations, and quotations, contains no more than 8,400 words as indicated by Microsoft Word, the word processing program used to prepare the brief.

This the 30th day of October, 2024.

/s/ Laura H. McHenry
Laura H. McHenry
Special Deputy Attorney General