IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:24-cv-00578-M-RN

| | |
|---|---|
| VIRGINIA WASSERBERG, NORTH CAROLINA REPUBLICAN PARTY, and REPUBLICAN NATIONAL COMMITTEE,<br><br>      Plaintiffs,<br><br>  v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS, ALAN HIRSCH, in his Official Capacity as the Chair of and a Member of the North Carolina State Board of Elections, JEFF CARMON, in his Official Capacity as the Secretary of and a member of the North Carolina State Board of Elections, KEVIN N. LEWIS, in his Official Capacity as a Member of the North Carolina State Board of Elections, SIOBHAN O'DUFFY MILLEN, in her Official Capacity as a Member of the North Carolina State Board of Elections, STACY "FOUR" EGGERS IV, in his Official Capacity as a Member of the North Carolina State Board of Elections, and KAREN BRINSON BELL, in her Official Capacity as Executive Director of the North Carolina State Board of Elections,<br><br>      Defendants,<br><br>and<br><br>NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS,<br><br>      Intervenor-Defendant. | **NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS'S REPLY IN SUPPORT OF MOTION TO DISMISS** |

## INTRODUCTION

Plaintiffs' attempt to force the State Board to reject ballots cast by qualified voters relies on repeated distortions of the law. At its foundation, Plaintiffs' argument arbitrarily assumes that North Carolina's requirement that absentee ballots must be "sealed in the container-return envelope," N.C.G.S. § 163-230.1(d), can only mean that adhesive must be applied directly to the container-return envelope. But no such requirement appears in North Carolina law. The Board's interpretation of how the sealing requirement may be met is more than reasonable and completely in line with that term's plain and ordinary meaning. Plaintiffs also refuse to engage with the clear language of the Civil Rights Act's materiality provision, which prohibits disenfranchisement based on paperwork errors or omissions that are immaterial in determining voter qualifications. Instead, Plaintiffs attempt to rewrite the law to justify their requested relief. In doing so, they ignore the Act's broad and express definition of "vote," proffering in its place an erroneous and atextual distinction between voter-qualification rules and vote-casting rules. But both the plain text of the materiality provision and the great weight of authority require the conclusion that the relief Plaintiffs demand would violate the Civil Rights Act. Indeed, at no point do Plaintiffs ever dispute that the *type* of envelope in which a ballot is sealed is entirely immaterial to a voter's eligibility. The Court should dismiss the complaint.

## ARGUMENT

### I. The State Board's guidance is consistent with state law.

Plaintiffs place great weight on an arbitrary distinction between sealing "the" container return envelope and "sealing some other outer envelope." ECF No. 42 at 9 ("Opp'n Br."). But that is a distinction without a difference for purposes of N.C.G.S. § 163-230.1(d). A container-return envelope that is enclosed within a larger, outer envelope is in fact "sealed" under the plain, ordinary

meaning of that term. Because the statute does not define the terms "seal" or "sealed," dictionary definitions provide helpful guidance to determine their meaning. *See, e.g.*, *Stark ex rel. Jacobsen v. Ford Motor Co.*, 365 N.C. 468, 476–77, 723 S.E.2d 753, 759 (2012). The definitions of "seal" include: "something that secures (such as a wax seal on a document)" or "a closure that must be broken to be opened and that thus reveals tampering."[1]

Applying these plain and ordinary meanings of the term, the container-return envelope has been "sealed" when a voter places a container-return envelope in an outer mailing envelope, and then seals the outer envelope. The contents of that outer envelope—which include the ballot application printed on the inner envelope and the ballot itself, are "secured" within the envelope. To access the ballot, the seal on the outer envelope must be "broken," revealing any tampering with its contents. That is all that North Carolina law requires. *See also In re Application of Langbaum*, 493 A.2d 580, 583, 201 N.J. Super. 484, 490 (App. Div. 1985) ("We conclude therefore that the absentee ballots which were received in sealed, untampered outer envelopes and contained complete certifications—where the only deficiency was the failure to seal the ballot in the inner envelope . . . are valid and should be counted in the election.").

Because North Carolina statutes are silent on the precise method of securing the container-return envelope, the State Board has the discretion to implement the sealing requirement. N.C.G.S. § 163-22(a) (granting the State Board "authority to make such reasonable rules and regulations

---

[1] *Seal*, Merriam-Webster, https://www.merriam-webster.com/dictionary/seal?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last visited Dec. 11, 2024); *see also Seal*, Black's Law Dictionary (12th ed. 2024) ("A fastening that must be broken before access can be obtained[.]"); *Seal*, Oxford English Dictionary, https://www.oed.com/dictionary/seal_v1?tab=meaning_and_use#23914827 (last visited Dec. 11, 2024) ("To fasten (a folded letter or other document) with melted wax or some other plastic material and impress a seal upon this, so that opening is impossible unless the seal is broken." or "[t]o place in a receptacle secured by a seal.").

with respect to the conduct of primaries and elections as it may deem advisable so long as they do not conflict with any provisions of [North Carolina election law]"). As the State Board has explained, North Carolina's Voter ID law requires voters to include a copy of a photo ID with their marked ballots, but the identifying document must be separate from the ballot that it accompanies to protect the voter's right to a secret ballot. *See* ECF No. 22 at 12.

The State Board has chosen an approach that both secures the ballot in a tamper-evident manner and protects the privacy of the voter's choice by separating the required identity document from the voted ballot itself. *See* N.C.G.S. § 163-229(b)(8). That is not, as Plaintiffs suggest, "ignor[ing]" state law, but a completely reasonable, practical, and even necessary approach that harmonizes all statutory requirements. Opp'n Br. at 14. Sealing the ballot, the inner envelope, and the photo ID inside a larger, outer envelope both protects the privacy of the voter's photo ID and accomplishes the purposes of the statutory sealing requirement.

Lastly, this procedure involves *two* envelopes—a necessity to protect the voter's right to a secret ballot—but North Carolina law requires only one "seal" to ensure that the ballot is not tampered with. A voter who seals only the outer envelope has therefore complied with the requirements of N.C.G.S. § 163-231(a)(3).

## II. Plaintiffs' requested relief would violate the Civil Rights Act's materiality provision.

### A. Rejecting absentee ballots constitutes a denial of the right to vote under the Civil Rights Act.

Plaintiffs contend that refusing to count thousands of ballots cast by registered North Carolina voters does not "deny the[ir] right . . . to vote." *See* Opp'n Br. at 27–30. This assertion not only violates common sense, it is refuted by the plain language of the Civil Rights Act, which defines "vote" as "*all action* necessary to make a vote effective including, but not limited to . . . *casting a ballot*, and *having such ballot counted* and included in the appropriate totals of votes

cast." 52 U.S.C. § 10101(a)(3)(A), (e) (emphasis added). Under the statute's plain language, when an absentee ballot cast by an otherwise eligible voter is not "included in the appropriate totals of votes cast," it constitutes a denial of the right to vote such that the materiality provision applies. *See id.*; *see also United States v. Classic*, 313 U.S. 299, 318 (1941) (holding the right to vote includes both the "right to cast a ballot" *and* "to have it counted").

Rather than engage with the text, Plaintiffs ask the Court to ignore it by reframing a failure to include a ballot application on an outer envelope as "forfeit[ing]" the right to vote. Opp'n Br. at 28. Plaintiffs' cited support is telling: a dissent and two out-of-circuit cases, all of which similarly—and fatally—fail to grapple with the Civil Rights Act's broad definition of "vote." 52 U.S.C. § 10101(a)(3)(A), (e). *See* Opp'n Br. at 28 (citing *Pa. State Conf. of NAACP Branches v. Secretary Commonwealth of Pa.,* 97 F.4th 120, 133–34 (3d Cir. 2024) ("*Pa. NAACP*"); *Ritter v. Migliori*, 142 S. Ct. 1824, 1825 (2022) (Alito, J., dissenting from denial of stay); *Vote.org v. Callanen*, 39 F.4th 297, 305 n.6 (5th Cir. 2022)). Indeed, one of those cases merely suggests, in a footnote, that Plaintiffs' argument is "plausible"—and that stray observation was dicta because the case involved voter registration applications, not ballot casting rules. *Vote.org*, 39 F.4th at 305 n.6. In any event, the argument is neither correct nor plausible: under Plaintiffs' logic, *any* immaterial error made by a voter could just as easily be reframed as "forfeit[ing]" the right to vote—an interpretation that would swallow the materiality provision wholesale.

At bottom, Plaintiffs' argument turns on their proffered distinction between "rules governing whether a voter is qualified in the first instance" and "[b]allot-casting rules." Opp'n Br. 28. The materiality provision makes no such distinction, however. To the contrary, it expressly prohibits denying the right to vote "in *any* election" due to an error or omission that is immaterial in determining a voter's qualifications "in *such* election." 52 U.S.C.§ 10101(a)(2)(B) (emphasis

- 5 -
Case 5:24-cv-00578-M-RN     Document 49     Filed 12/11/24     Page 5 of 9

added). That language, which expressly protects a voter's right to participate in a *specific* election, cannot be reconciled with Plaintiffs' suggestion that Congress only sought to address voter registration. *La Union del Pueblo Entero v. Abbott*, 705 F. Supp. 3d 725, 756 (W.D. Tex. 2023) ("*LUPE*") (noting the materiality provision "prohibits denial of the right to vote in a single election *just as thoroughly* as it prohibits wholesale refusal to register a voter"), *stayed pending appeal sub nom. United States v. Paxton*, No. 23-50885 (5th Cir. Dec. 15, 2023) (emphasis added). The relief Plaintiffs seek would plainly "deny" North Carolina citizens "the right . . . to vote." 52 U.S.C.§ 10101(a)(2)(B).

### B. The absence of a ballot application on a return envelope is an omission on a paper relating to an application or other act requisite to voting.

Plaintiffs' view of the law would require election officials to reject a qualified voter's ballot solely because it is returned in a sealed envelope that does not contain the ballot application on the outside, even if a completed application is placed inside and meets all statutory requirements for establishing a voter's eligibility and identity. That is precisely the type of immaterial "error on [a] paper relating to [an] application" the materiality provision guards against. 52 U.S.C. § 10101(a)(2)(B).

Although Plaintiffs insist that this case "is not about whether an absentee voter's failure to include information on the outside of the outer envelope could serve as a legal reason to reject the ballot inside," Opp'n Br. at 18–19, that is the consequence of their allegations. The basis for their assertion that sealing an outer envelope cannot meet the sealing requirements of N.C.G.S. § 163-231(a)(3) is that the outer envelope is not *the* container-return envelope. *See* Opp'n Br. at 9–11. But the only distinguishing feature of the container-return envelope is that the absentee ballot application is printed on the outside. N.C.G.S. § 163-229(b); *see also* Opp'n Br. at 2–3. And Plaintiffs contend that an absentee ballot *must be rejected* if it is sealed in an envelope that does

not include the ballot application on the outside. The envelope—which typically serves as an "application"—is indisputably a "paper relating to any application," falling squarely within the materiality provision's scope. N.C.G.S. § 163-229(b); 52 U.S.C. § 10101(a)(2)(B).

Plaintiffs also argue that the materiality provision applies only to errors or omissions made at the voter registration stage. But that cramped interpretation is belied by the plain text of the Civil Rights Act and has been repeatedly and properly rejected. *See, e.g.*, *LUPE*, 705 F. Supp. 3d at 757 (concluding the materiality provision applies to the preparation of a carrier envelope because it is an "act requisite to voting" for individuals who cast a mail ballot); *In re Ga. Senate Bill 202*, No. 1:21-mi-55555, 2023 WL 5334582, at *10 (N.D. Ga. Aug. 18, 2023) (rejecting argument that the materiality provision did not apply to absentee ballot envelope requirements); *Vote.org v. Ga. State Election Bd.*, 661 F. Supp. 3d 1329, 1338 (N.D. Ga 2023) (rejecting argument that the materiality provision did not apply to absentee ballot applications); *Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1308–09 (N.D. Ga. 2018) (holding requirement to include birth year on absentee ballot envelope likely violates materiality provision); *League of Women Voters of Ark. v. Thurston*, No. 5:20-cv-05174, 2023 WL 6446015, at *16 (W.D. Ark. Sept. 29, 2023) (applying materiality provision to absentee ballot applications); *Common Cause v. Thomsen*, 574 F. Supp. 3d 634, 636 (W.D. Wis. 2021) (observing that the materiality provision "isn't limited to . . . voter registration"); *Ford v. Tenn. Senate*, No. 06-2031 D V, 2006 WL 8435145, at *7, 10–11 (W.D. Tenn. Feb. 1, 2006) (holding materiality provision prohibits state officials from refusing to count in-person voters' ballots because they had not met the requirement to separately sign both a ballot application form and a poll book).

The two out-of-circuit cases Plaintiffs rely on for their narrow view of the materiality provision are both distinguishable and unpersuasive. In *Pa. NAACP*, "[e]veryone agree[d]" that

the absentee ballot envelope did not "relate to applying or registering to vote." 97 F.4th at 131. Similarly, in *Liebert v. Millis*, No. 23-CV-672-JDP, 2024 WL 2078216, at *10 (W.D. Wis. May 9, 2024), there was "no dispute that an absentee-ballot envelope" in Wisconsin was "not related to a 'registration' or an 'application.'" Accordingly, both courts had to parse whether completing the absentee ballot envelope was an "act requisite to voting" under the materiality provision. *See Pa. NAACP*, 97 F.4th at 131; *Liebert*, 2024 WL 2078216, at *10. Here, the carrier-return envelope *serves* as an "application" to vote absentee in North Carolina, N.C.G.S. §§ 163-229(b); 163-230.1(e), (f), so the plain text of the materiality provision covers errors or omissions "relating to [the] application" that is printed on the return envelopes, 52 U.S.C. § 10101(a)(2)(B).

The courts in *Pa. NAACP* and *Liebert*, moreover, made at least two major textual errors. First, they limited the materiality provision's coverage to errors or omissions during the "voter qualification process"—*i.e.*, registration and applications to register—adopting a reading of the statute that, by the *Pa. NAACP* panel's own admission, renders the phrase "other act requisite to voting" superfluous. 97 F.4th at 138. Second, both courts disregarded the "expansive[]" definition of the term "vote" in the Civil Rights Act, *Senate Bill 202*, 2023 WL 5334582, at *9, and excluded all "vote-casting" rules from the materiality provision—conclusions that run directly contrary to the Act's explicit text. In the Act, Congress defined "vote" as "all action necessary to make a vote effective including . . . casting a ballot, and having such ballot counted." 52 U.S.C. § 10101(a)(3)(A), (e). If this Court were to adopt Plaintiffs' proffered interpretation of the materiality provision, it would need to ignore the great weight of authority, the unique facts of this case, and the plain text of the law. The Court should decline to do so.

    **C.**    **The absence of a ballot application on the outer return envelope is immaterial in determining whether an individual is qualified to vote under state law.**

As outlined above, the materiality provision applies here. Plaintiffs' strained interpretation

of North Carolina law would violate that provision because returning a sealed envelope that does not contain the ballot application on the outside is "not material" in determining whether individuals are "qualified under State law to vote." 52 U.S.C.§ 10101(a)(2)(B). Plaintiffs do not argue otherwise, for good reason: when a voter has established their voting eligibility and identity, the precise location of the ballot application—whether it is printed on the inner envelope or the outer return envelope—is immaterial in determining whether the voter meets North Carolina's voter eligibility requirements. *See* N.C.G.S. § 163-55. Accepting Plaintiffs' flawed interpretation of North Carolina law (and their requested relief) would therefore result in a violation of the materiality provision.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint.

Dated: December 11, 2024

Respectfully submitted,

/s/ Narendra K. Ghosh_____

Uzoma Nkwonta, D.C. Bar No. 975323
Richard A. Medina, D.C. Bar No. 90003752
James J. Pinchak, N.Y. Bar No. 5965397*
Julie Zuckerbrod, D.C. Bar No 1781133
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
unkwonta@elias.law
rmedina@elias.law
jpinchak@elias.law
jzuckerbrod@elias.law

Narendra K. Ghosh, N.C. Bar No. 37649
**PATTERSON HARKAVY LLP**
100 Europa Drive, Suite 420
Chapel Hill, NC 27217
Telephone: (919) 942-5200
nghosh@pathlaw.com

*Local Civil Rule 83.1(d) Attorney for Intervenor-Defendant*

*Attorneys for Intervenor-Defendant*

*\*Notice of Special Appearance Forthcoming*