UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-cv-00578-M

| | |
|---|---|
| VIRGINIA WASSERBERG, NORTH CAROLINA REPUBLICAN PARTY, and REPUBLICAN NATIONAL COMMITTEE,<br>Plaintiffs,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS, et al.,<br>Defendants,<br><br>and<br><br>NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS,<br>Intervenor-Defendant. | **DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO DISMISS**<br><br>Local Civil Rule 7.1(g)(1) |

Plaintiffs' Response either misunderstands or misconstrues the Board's position. Plaintiffs assert that the Board ignored state law in issuing the Numbered Memo and contend that the Materiality Provision does not apply to this case. Neither argument is persuasive, particularly in light of the Statement of Interest of the United States filed on November 27, 2024. Plaintiffs' Complaint fails to state a claim for relief and should be dismissed.

Consistent with Local Rule 7.1(g), this Reply addresses matters newly raised in Plaintiffs' Response. Taken together with the arguments and authorities presented in the Board's initial brief, the Board respectfully requests that this Court grant the Board's Motion to Dismiss [DE 21] pursuant to Fed. R. Civ. P. 12(b)(6).

## I. The Board Did Not Ignore or Disregard State Law When Issuing Guidance on the Proper Handling of Absentee Ballot Deficiencies in the Numbered Memo.

The State Board did not disregard state law, or otherwise instruct county boards of elections to disregard state law, when providing guidance to county boards in the Numbered Memo. Plaintiffs' argument to the contrary fails for two reasons.

First, the Numbered Memo contains a comprehensive discussion of and citations to those same statutes Plaintiffs now contend the Board has instructed the county boards of elections to ignore. *See* DE 1-4, pp 3-6. Plaintiffs may disagree with the Board's interpretation of the portions of N.C. Gen. Stat. §§ 163-229, -230.1, and 231 (which they refer to as the "CRE" statutes) when the Board updated its guidance as part of its implementation of the photo identification requirements. And they may disagree with the Board's plain language description of one of the envelopes used in the two-ballot system now used to return an absentee ballot and accompanying photo ID documentation—i.e., calling it a "ballot envelope" so election officials more easily understand when the guidance is referring to the envelope in which the ballot is placed by the voter. But to argue that the Board's guidance amounts to an instruction to the county boards of elections to disregard the CRE statutes altogether plainly fails on its face. The guidance at issue in the Numbered Memo is simply instructing county boards of elections on how to proceed in the rare instance where a voter's absentee ballot is returned with the ballot envelope unsealed yet the outer envelope is sealed.

Second, the State Board interpreted the controlling statutes in the only manner that reconciles the General Assembly's absentee voting statute with its subsequently passed voter ID statute. Considered together, those statutes require a two-envelope return package rather than a single envelope return package—a reality that Plaintiffs do not deny. Because the CRE statutes

did not contemplate two envelopes, the statutes naturally do not distinguish between the inner envelope that contains the marked ballot and an outer envelope containing the inner envelope and the voter ID documentation. Plaintiffs altogether overlook the significance of this fact.

Instead, Plaintiffs assert that this Court would have to "rewrite the CRE statutes" to adopt the Board's position. (Pl's Resp. Br. p 10). Not so. When a party asserts a conflict between two statutes, "it is a general rule that the courts must harmonize such statutes, if possible, and give effect to each . . . ." *Blowing Rock v. Gregorie*, 243 N.C. 364, 371, 90 S.E.2d 898, 904 (1956). Indeed, courts disfavor any interpretation of state law that contradicts another law. *See Pinebluff v. Moore Cty*, 374 N.C. 254, 257, 839 S.E.2d 833, 835 (2020). Since courts are to assume the legislature acts with full knowledge of prior and existing law, statutes must be read in context of one another and reasonably construed to promote each law's intended effect. *Id.* at 256, 839 S.E.2d at 835. *See also McLean v. Durham Cnty. Bd. of Elections*, 222 N.C. 6, 8-9, 21 S.E.2d 842, 844 (1942) ("Statutes on the same subject are to be reconciled if this can be done by giving effect to the fair and reasonable intendment of both acts.").

Defendants' initial brief explains in detail how the Board's position accomplishes this reconciliation. The Board thus relies on its previously submitted arguments and authorities in support of its position on how these statutes can be read together and properly implemented. The Board's interpretation of the CRE Statutes is correct, and Plaintiffs' Complaint should be dismissed.

**II.     The Materiality Provision Applies to this Case.**

Plaintiffs' argument that the Materiality Provision is not implicated in this case is similarly unpersuasive. Congress did not intend to limit the applicability of the Materiality Provision in the manner Plaintiffs suggest, as several courts have held. Moreover, not only is the Board's

interpretation of state law regarding absentee ballot envelopes correct; it is also the only interpretation that is consistent with the Materiality Provision of the federal Civil Rights Act.

The Materiality Provision provides,

> No person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election;

52 U.S.C. § 10101(a)(2)(B). For the reasons explained below, this statute is implicated by the facts of this case and prevents the Board from not counting ballots received in a sealed envelope even if an inner envelope is unsealed.

### A. An absentee ballot packet constitutes a "record or paper."

As Plaintiff correctly observes, Congress's objective in passing the Materiality Provision was to address the practice of requiring arbitrary and unnecessary steps in the voting process, with the intent that "such requirements would increase the number of errors or omissions on the application forms, thus providing an excuse to disqualify potential voters." *E.g., Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003). Rejecting a ballot that is received inside a sealed outer envelope, regardless of whether the inner envelope is also sealed, is exactly the type of arbitrary requirement on a "record or paper relating to any application, registration, or other act requisite to voting," contemplated by the Materiality Provision.

Plaintiffs cite three cases where district courts determined the Materiality Provision did not apply. None are instructive here. *Democratic Cong. Campaign Comm. v. Kosinski*, 614 F. Supp. 3d 20, 55 (S.D.N.Y. 2022), involved voters who cast ballots at the wrong polling location. *Indiana Democratic Party v. Rokita*, 458 F. Supp. 2d 775, 841 (S.D. Ind. 2007), affd, sub. nom., *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181 (2008), involved a challenge to Indiana's voter ID law.

4

And *Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1372 (S.D. Fla. 2004), held that imposing a deadline to return an absentee ballot did not disenfranchise voters under the Materiality Provision. These courts concluded that polling locations, deadlines, and voter IDs do not constitute a "record or paper" under the Materiality Provision. In contrast, the failure to properly seal an envelope containing an absentee ballot reasonably constitutes an error or omission on any record or paper. Thus, the Materiality Provision applies here. Nothing in the cases Plaintiffs cite suggest otherwise.

Plaintiffs categorize the cases cited in the Board's initial brief as "inapposite" but concede they involve requirements related to absentee ballots and applications that the courts found could not be used as an excuse to disqualify voters. (Plns.' Resp. Br. p. 18); *see also Schwier*, 340 F.3d at 1294; *see also Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1308-09 (N.D. Ga. 2018) and *Ford v. Tenn. Senate*, No. 06-2031 DV, 2006 U.S. Dist. LEXIS 118780 (W.D. Tenn. Feb. 1, 2006).

Next, Plaintiffs attempt to draw a correlation between a failed seal on an envelope and a failure to use an envelope altogether. (*See* Plns.' Resp. Br. p 17). Plaintiffs' reasoning is flawed, and the analogy is too tenuous to be useful here. The most obvious reason this argument fails is that the failure to use a ballot envelope at all would mean a voter submitted a ballot without also submitting the application and certificate required by N.C. Gen. Stat. §§ 163-229(b) and -231(a)(4) to determine a voter's qualifications. In addition, in *Ball v. Chapman*, 289 A.3d 1 (Pa. 2022), upon which Plaintiffs rely, the court specifically stated that the question of a voter's failure to use a secrecy envelope was not before it. (Plns.' Resp. Br. pp. 27-28).[1] In fact, the Pennsylvania Supreme Court's analysis in *Ball* actually favors the State Board's position.

---

[1] Similarly, Plaintiffs' quotation from *Pa. State Conf. of NAACP Branches v. Sec'y Pa.* regarding "secrecy envelopes" comes from the dissenting opinion and was not an issue presented to the majority. *See* 97 F.4th 120, 148 n.17 (3d Cir. 2024).

"[S]tate election regulations are indeed subject to the superintendence of federal law, and recognizing as much is neither controversial nor improper." *Id.* at 27. The Materiality Provision is implicated by the facts of this case and mandates dismissal of Plaintiffs' claims.

### B. The Materiality Provision applies to the sealing of an envelope containing an absentee ballot.

Plaintiffs' position that the Materiality Provision only applies to voter registration is not supported by case law—even the case law Plaintiffs cite in their response. *See, e.g., Ball*, 289 A.3d at 25 (rejecting the plaintiffs position and holding that the Materiality Provision applies to "all action necessary to make a vote effective"); *Pa. State Conf. of NAACP Branches*, 97 F.4th at 153 ("the Materiality Provision means that State actors cannot deprive a voter of the right to vote due to an error or omission he makes on papers that he must complete to have his ballot counted, including on papers distinct from application or registration forms . . . .").[2] Nor is this position supported by the text of the Civil Rights Act itself. *See* 52 U.S.C. § 10101(e) (defining "vote" to include "all action necessary to make a vote effective, including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted."). Even the legislative history references "errors or omissions in any step of the voting process," not just voter registration. *See* DE 43, p 11 (quoting 10 Cong. Rec. 6970 (1964)). As the United States Department of Justice noted, courts regularly apply the Materiality Provision to mail ballot applications and envelopes. [DE 43, pp 5-8] Plaintiffs' argument is simply incorrect.

---

[2] Moreover, Plaintiffs' quotations and citations to the district court's ruling in *Liebert v. Millis*, No. 23-cv-672-jdp, 2024 U.S. Dist. LEXIS 85088, at *37 (W.D. Wis. May 9, 2024) are simply a discussion of the *Pa. State Conf. of NAACP Branches* opinion, not a separate conclusion about whether the Materiality Provision's scope extends beyond voter registration.

### C. Submitting an absentee ballot is undeniably an "act requisite to voting."

Similarly, Plaintiffs' argument that the application on the outside of a container-return envelope "is not the kind of application to which the Materiality Provision refers" fails. (*See* Plns.' Resp. Br. p 24) As a threshold matter, this case is not about the application on the outside of the container-return envelope. Moreover, this argument is grounded in Plaintiffs' position that the Materiality Provision only applies to voter registration. As explained in the State of Interest of the United States [DE 43], this position is not supported by the statutes' text, legislative history, or case law.

The Materiality Provision applies to any "error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B). Section (e) contains an "expansive definition of the word 'vote,' a definition which [the court] is not at liberty to ignore." *Ball*, 289 A.3d at 24-25. Thus, application of the Materiality Provision is not limited to voter registration but includes the right to have one's ballot counted and included in the tallies for a particular election. *Id.* at 25. To hold otherwise "would render the materiality provision completely null." *Id.* If the Court adopts Plaintiffs' interpretation, the Materiality Provision would never be triggered because every "error or omission" would constitute a voter's accidental forfeiture of his or her vote by failing to follow every technical statutory requirement. *See id.*

### D. Rejecting a ballot under these circumstances denies an individual's right to vote.

Finally, Plaintiffs argue the Materiality Provision does not apply because a voter is not "denied the right to vote when his or her absentee ballot is rejected due to a failure to comply

7

with a state ballot-casting rule." (Plns.' Resp. Br. p 28) This is because, Plaintiffs submit, a voter does not have a right to have a defective ballot counted. *Id.* (citing *Pa. State Conf. of NAACP Branches*, 97 F.4th at 133). But this logic disregards the import of federal law completely. *See supra* II.A-C. If a voter's "error or omission on any record or paper . . ." constitutes a defective ballot that forfeits a voter's right to have his or her vote counted, then the Materiality Provision is rendered completely null. *See Ball*, 289 A.3d at 25. An order reaching such a conclusion would violate federal law and the Supremacy Clause.

## CONCLUSION

For the reasons discussed above and those stated in the Memorandum of Law Supporting the Motion to Dismiss, Defendants respectfully request that Plaintiff's Complaint be dismissed with prejudice.

Respectfully submitted, this the 11th day of December, 2024.

JOSHUA H. STEIN
Attorney General

/s/ Laura H. McHenry
Laura H. McHenry
Special Deputy Attorney General
N.C. State Bar No.: 45005
E-mail: lmchenry@ncdoj.gov

/s/ Mary Carla Babb
Mary Carla Babb
Special Deputy Attorney General
N.C. State Bar No.: 25731
E-mail: mcbabb@ncdoj.gov

North Carolina Dept. of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6900
*Counsel for State Board Defendants*

**CERTIFCATE OF COMPLIANCE**

Undersigned counsel certifies that this memorandum of law complies with Local Rule 7.2(f)(3)(C) in that the brief, including headings, footnotes, citations, and quotations contains no more that 2800 words as indicated by Microsoft Word, the word processing program used to prepare the brief.

This the 11th day of December, 2024.

/s/ Laura H. McHenry
Laura H. McHenry
Special Deputy Attorney General